# UNITED STATES COURT OF APPEALS
# FOR THE FEDERAL CIRCUIT

15-5036

FIDELITY & GUARANTY INSURANCE UNDERWRITERS, INC.;
UNITED STATES FIDELITY & GUARANTY CO.,

*Plaintiffs-Appellants,*

v.

UNITED STATES,

*Defendant-Appellee.*

---

Appeal from United States Court of Federal Claims in
Case No. 14-cv-84, Judge Elaine D. Kaplan

---

**BRIEF AND APPENDIX OF PLAINTIFFS-APPELLANTS
FIDELITY & GUARANTY INSURANCE UNDERWRITERS, INC. AND
UNITED STATES FIDELITY & GUARANTY CO.**

---

Richard L. McConnell
Brendan J. Morrissey
Wiley Rein LLP
1776 K Street, NW
Washington, DC, 20006
Tel: (202) 719-7000
Fax: (202) 719-7049

February 17, 2015                    *Counsel for Appellants*

Form 9

FORM 9.  Certificate of Interest

# UNITED STATES COURT OF APPEALS FOR THE FEDERAL CIRCUIT

Fidelity & Guaranty Ins. Underwriters, Inc.;

U.S. Fidelity & Guaranty Co.                    v. United States

No. 15-5036

## CERTIFICATE OF INTEREST

Counsel for the (petitioner) (appellant) (respondent) (appellee) (amicus) (name of party)

all Appellants _____ certifies the following (use "None" if applicable; use extra sheets if necessary):

1.    The full name of every party or amicus represented by me is:

1) Fidelity & Guaranty Insurance Underwriters, Inc.
2) United States Fidelity & Guaranty Co.

2.    The name of the real party in interest (if the party named in the caption is not the real party in interest) represented by me is:

3.    All parent corporations and any publicly held companies that own 10 percent or more of the stock of the party or amicus curiae represented by me are:

See Attachment A

4.  ☑  The names of all law firms and the partners or associates that appeared for the party or amicus now represented by me in the trial court or agency or are expected to appear in this court are:

Wiley Rein LLP; Richard L. McConnell; Brendan J. Morrissey

| 12/29/2014 | /s/ Richard L. McConnell |
|---|---|
| Date | Signature of counsel |
| | Richard L. McConnell |
| | Printed name of counsel |

Please Note: All questions must be answered

cc: _____

124

# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FEDERAL CIRCUIT

| | |
|---|---|
| FIDELITY AND GUARANTY INSURANCE UNDERWRITERS, INC., and UNITED STATES FIDELITY AND GUARANTEE COMPANY,<br><br>     Appellants,<br><br>v.<br><br>THE UNITED STATES OF AMERICA,<br><br>     Defendant. | No. 15-5036 |

## ATTACHMENT A TO CERTIFICATE OF INTEREST

Appellants Fidelity and Guaranty Insurance Underwriters, Inc. and United States Fidelity and Guaranty Company state as follows:

Appellant Fidelity and Guaranty Insurance Underwriters, Inc. is 100% owned by United States Fidelity and Guaranty Company, which is 100% owned by St. Paul Fire and Marine Insurance Company, which is 100% owned by The Travelers Companies, Inc.  The Travelers Companies, Inc. is the only publicly held company in the corporate family.  No individual or corporation owns 10% or more of the stock of The Travelers Companies, Inc.

Appellant United States Fidelity and Guaranty Company is 100% owned by St. Paul Fire and Marine Insurance Company, which is 100% owned by The Travelers Companies, Inc.  The Travelers Companies, Inc. is the only publicly held company in the corporate family.  No individual or corporation owns 10% or more of the stock of The Travelers Companies, Inc.

# TABLE OF CONTENTS

Page

CERTIFICATE OF INTEREST

STATEMENT OF RELATED CASES ................................................................1

STATEMENT OF JURISDICTION.................................................................1

STATEMENT OF THE ISSUES......................................................................1

STATEMENT OF THE CASE AND RELEVANT FACTS ...................................1

I.      STATEMENT OF FACTS .....................................................................2

II.     COURSE OF PROCEEDINGS AND DISPOSITION ..................................4

SUMMARY OF THE ARGUMENT .................................................................8

ARGUMENT .............................................................................................11

I.      STANDARD OF REVIEW ..................................................................11

II.     THE TUCKER ACT WAIVES SOVEREIGN IMMUNITY FROM AND
        PROVIDES JURISDICTION OVER CLAIMS BY EQUITABLE
        SUBROGEES THAT ARE FOUNDED UPON CONTRACTS WITH THE
        GOVERNMENT. ............................................................................12

        A.      The Express Language Of The Tucker Act Waives Sovereign
                Immunity With Respect To All "Claims" Founded Upon Contracts
                With The Government.....................................................12

        B.      The Tucker Act And Similar Statutory Waivers of Sovereign
                Immunity As To "Claims," As Construed By This Court And The
                Supreme Court, Extend To Equitable Subrogees................13

                1.      In *Aetna*, The Supreme Court Definitively Construed The
                        FTCA's Waiver Of Sovereign Immunity As To "Claims" To
                        Include Claims Asserted By Equitable Subrogees. ...........13

                2.      This Court's Decision In *Insurance Company of the West*
                        Adopted And Applied The Reasoning Of *Aetna* To Claims
                        Brought By Equitable Subrogees Under The Tucker Act. .......16

i

        3.    *Insurance Company Of The West* Correctly Interpreted The Tucker Act As Providing Jurisdiction For Claims Asserted By Persons Who Acceded To Their Interests By Operation Of Law ........................................................................................... 18

    C.    Equitable Subrogees, Including Plaintiffs-Appellants Here, "Stand In The Shoes" Of Federal Contractors For Purposes Of Asserting Rights Relating To Claims They Have Paid .................................................... 22

III.    THE COURT OF FEDERAL CLAIMS ERRED IN FAILING TO FOLLOW THIS COURT'S DECISION IN *INSURANCE COMPANY OF THE WEST*, AND MISCONSTRUED OTHER DECISIONS. ................... 27

    A.    The Court Below Mischaracterized The Key Rulings In *Insurance Company Of The West* As Dicta .......................................................... 27

    B.    The Cases Cited In The Decision Below Do Not Support The Overly Restrictive Construction Of The Tucker Act Adopted By The Court Of Federal Claims. ............................................................................ 30

    C.    It Is Well-Established That Equitable Subrogees "Stand In The Shoes" Of Contractors And Have Standing To Sue. ...................................... 34

CONCLUSION ....................................................................................... 38

JOINT APPENDIX

CERTIFICATE OF SERVICE

CERTIFICATE OF COMPLIANCE

# <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*Amber Resources Co. v. United States*,
    538 F.3d 1358 (Fed. Cir. 2008) ...........................................................23

*Anderson v. United States*,
    344 F.3d 1343 (Fed. Cir. 2003) ...........................................................23

*Arbaugh v. Y&H Corp.*,
    546 U.S. 500 (2006)...........................................................................22

*Balboa Insurance Co. v. United States*,
    775 F.2d 1158 (Fed. Cir. 1985) .....................................................*passim*

*Banks v. United States*,
    741 F.3d 1268 (Fed. Cir. 2014) ...........................................................11

*Clearfield Trust Co. v. United States*,
    318 U.S. 363 (1943)...........................................................................22

*Dependable Insurance Co. v. United States*,
    846 F.2d 65 (Fed. Cir. 1988) .......................................................36, 38

*Department of the Army v. Blue Fox, Inc.*,
    525 U.S. 255 (1999)......................................................................28, 29

*Erwin v. United States*,
    97 U.S. 392 (1878)......................................................................15, 18

*Federal Insurance Co. v. United States*,
    29 Fed. Cl. 302 (1993) ...............................................................*passim*

*Fireman's Fund Insurance Co. v. England*,
    313 F.3d 1344 (Fed. Cir. 2002) ...........................................................20

*First Hartford Corp. Pension Plan & Trust v. United States*,
    194 F.3d 1279 (Fed. Cir. 1999) .............................................................7

*First National City Bank v. United States*,
  548 F.2d 928 (Ct. Cl. 1977) ................................................................24, 25, 32

*Fisher v. United States*,
  402 F.3d 1167 (Fed. Cir. 2005) ........................................................22

*Hardie v. United States*,
  19 Fed. App'x 899 (Fed. Cir. 2001) .................................................23

*Hebah v. United States*,
  428 F.2d 1334 (Ct. Cl. 1970) ............................................................21

*Henningsen v. United States Fidelity & Guaranty Co.*,
  208 U.S. 404 (1908)................................................................27, 28, 29

*Industrial Bank of Washington v. United States*,
  424 F.2d 932 (D.C. Cir. 1970) ..........................................................19

*Insurance Co. of the West v. United States*,
  243 F.3d 1367 (Fed. Cir. 2001) ..............................................*passim*

*Jan's Helicopter Serv., Inc. v. FAA*,
  525 F.3d 1299 (Fed. Cir. 2008) ....................................................9, 12

*Khan v. United States*,
  201 F.3d 1375 (Fed. Cir. 2000) ........................................................11

*Krueger v. Cartwright*,
  996 F.2d 928 (7th Cir. 1993) ............................................................24

*Mason v. United States*,
  461 F.2d 1364 (Ct. Cl. 1982)......................................................20, 21

*Pearlman v. Reliance Insurance Co.*,
  371 U.S. 132 (1962)......................................................................28, 29

*Prairie State Bank v. United States*,
  164 U.S. 227 (1896)......................................................27, 28, 29, 31

*Reynolds v. Army & Air Force Exchange Services*,
  846 F.2d 746 (Fed. Cir. 1988) .........................................................11

iv

*Roedler v. Department of Energy*,
    255 F.3d 1347 (Fed. Cir. 2001) ...................................................22, 23

*St. Paul & Duluth Railroad Co. v. United States*,
    112 U.S. 733 (1885)............................................................................18

*Sullivan v. United States*,
    625 F.3d 1378 (Fed. Cir. 2010) .......................................................23

*Texas Peanut Farmers v. United States*,
    409 F.3d 1370 (Fed. Cir. 2005) .......................................................11

*Total Medical Management v. United States*,
    104 F.3d 1314 (Fed. Cir. 1997) .......................................................22

*Travelers Casualty & Surety Co. of America v. United States*,
    103 Fed. Cl. 101 (2012) ............................................10, 30, 21, 33, 34

*Trusted Integration, Inc. v. United States*,
    659 F.3d 1159 (Fed. Cir. 2011) .......................................................11

*United States v. Aetna Casualty & Surety Co.*,
    338 U.S. 366 (1949)...................................................................*passim*

*United States v. California*,
    507 U.S. 746 (1993)....................................................................25, 36

*United States v. Gillis*,
    95 U.S. 407 (1877).............................................................................18

*United States v. Mason*,
    412 U.S. 391 (1973)....................................................................20, 21

*United States v. Mitchell*,
    463 U.S. 206 (1983)..........................................................9, 12, 13, 19

*United States v. Munsey Trust Co. of Washington, D.C.*,
    332 U.S. 234 (1947)....................................................................25, 36

*United States v. Winstar Corp.*,
    518 U.S. 839 (1996)..........................................................................22

*US Airways, Inc. v. McCutchen*,
  133 S. Ct. 1537 (2013) ................................................................25

*U.S. Marine, Inc. v. United States*,
  722 F.3d 1360 (Fed. Cir. 2013) ...................................................22

**Statutes**

28 U.S.C. § 1295 ..............................................................................1

28 U.S.C. § 1346 .......................................................................14, 19

28 U.S.C. § 1491 .............................................1, 4, 8, 12, 16, 19

28 U.S.C. § 3727 .............................................................................14

39 U.S.C. § 410 ...............................................................................18

41 U.S.C. § 7101 .............................................................................20

41 U.S.C. § 7103 .............................................................................19

The Tucker Act, 24 Stat. 505 (1887) ...............................................18

**Other Authorities**

5 Jeffrey E. Thomas, New Appleman on Insurance Law Library Edition
  § 49.02[3][b] (2013) .................................................................24

23 Williston on Contracts, § 61:51 (4th ed. 2014) .................25, 32, 36

## STATEMENT OF RELATED CASES

Pursuant to Circuit Rule 47.5, counsel is not aware of any case related to this one.

## STATEMENT OF JURISDICTION

This is an appeal from a final judgment of the Court of Federal Claims adjudicating a claim brought by Fidelity & Guaranty Insurance Underwriters, Inc. and United States Fidelity & Guaranty Co. (collectively, "USF&G") under the Tucker Act, 28 U.S.C. § 1491(a)(1).  JA14.  Final judgment dismissing the action for lack of subject matter jurisdiction was entered on November 21, 2014.  JA01. USF&G timely filed a notice of appeal on December 10, 2014.  This Court has jurisdiction under 28 U.S.C. § 1295(a)(3).

## STATEMENT OF THE ISSUES

Whether, consistent with *United States v. Aetna Casualty & Surety Co.*, 338 U.S. 366 (1949) and *Insurance Company of the West v. United States*, 243 F.3d 1367 (Fed. Cir. 2001), the Tucker Act waives sovereign immunity for claims founded upon a contract between the Government and its contractor that are brought by a general liability insurer as equitable subrogee of the contractor.

## STATEMENT OF THE CASE AND RELEVANT FACTS

This is a Tucker Act case brought by USF&G, a general liability insurer, as equitable subrogee of its insured Government contractor.   USF&G seeks

1

compensation for amounts it was required to expend as a result of the Government's wrongful breach of contract and failure to hold harmless and indemnify that contractor. The Court of Federal Claims held that it lacked subject matter jurisdiction, based upon its conclusion that the Tucker Act does not waive the Government's sovereign immunity from claims brought by general liability insurers as equitable subrogees. The decision below is not yet printed in the Federal Claims reporter, but is available electronically at 2014 WL 6491835 and is reprinted in the Joint Appendix at JA02-09. USF&G now appeals.

## I.    STATEMENT OF FACTS

In 1984, the United States Postal Service ("USPS") awarded Gibbs Construction, L.L.C. f/k/a Gibbs Construction Co. ("Gibbs"), a general contractor, a contract for the abatement of asbestos and fireproofing of the main Post Office in New Orleans, Louisiana. JA15. Gibbs in turn contracted with Laughlin-Thyssen, Inc. f/k/a Laughlin Development Corporation ("LTI") for the asbestos removal portion of the project. *Id.*

On November 26, 1985, during the course of performance under the contract, Gibbs advised USPS that, due to unanticipated delays caused by USPS, it was having difficulty procuring general liability insurance that would cover asbestos removal at an affordable price for the remainder of the project. *Id.* Gibbs consequently requested from USPS additional consideration to cover the

procurement of additional insurance, which was necessitated by USPS's conduct.

JA15-16.  Instead of providing Gibbs with additional compensation, on March 12,

1987, USPS executed an addendum to the contract.  JA16.  The addendum stated

as follows:

### ASBESTOS REMOVAL/REPAIR LIABILITY

> The Postal Service shall save harmless and indemnify the contractors
> and its officers, agents, representatives, and employees from all
> claims, loss damage, actions, causes of action expense and/or liability
> resulting from brought for or no account of any personal injury
> received or sustained by any person persons attributable to the
> asbestos' removal work performed under or related to this contract.

*Id.* (typographical and grammatical errors in original).   The addendum was

executed by W. Bruce Powell, Jr., the USPS Contracting Officer with

responsibility for the project, who had actual and apparent authority to agree to the

contract modification.  *Id.*  Gibbs thereafter completed work on the contract to the

satisfaction of USPS in June 1988.  JA17.

USF&G issued three general liability insurance policies to Gibbs, which

were in effect during three successive annual policy periods from January 1, 1985

through January 1, 1988.  JA14, 16-17.

On March 25, 2010, Louis Wilson, a former USPS Postal Police Officer,

filed suit against Gibbs and LTI, alleging that he contracted mesothelioma as a

result of his occupational exposure to asbestos during the asbestos removal and

fireproofing project between September 1984 and January 1988. JA17. Gibbs demanded that USPS defend and indemnify Gibbs with respect to Mr. Wilson's suit, but USPS rejected that demand. *Id.* After USPS failed and refused to comply with its obligations under the addendum, Gibbs demanded that its insurers, including USF&G, defend and indemnify it in the Wilson lawsuit. *Id.*

The Wilson lawsuit ultimately was settled, with Gibbs and its insurers together paying $1,375,000 to Mr. Wilson. JA17. USF&G paid $1,031,250.00 of the settlement amount and additionally paid $529,333.34 in legal expenses to defend the suit. *Id.* USF&G paid a total of $1,560,583.34 in legal expenses and settlement costs in the Wilson lawsuit. JA17-18.

After the settlement, Gibbs, pursuant to the Contract Disputes Act, again tendered a demand to the USPS Contracting Officer on July 30, 2012, seeking indemnification for the amounts paid by Gibbs and its insurers in defending and settling the Wilson lawsuit. JA17. USPS Contracting Officer Kevin M. Gaughan denied Gibbs's claim on January 29, 2013. JA18.

## II.     COURSE OF PROCEEDINGS AND DISPOSITION

USF&G, as equitable subrogee to Gibbs by virtue of its nondiscretionary payments on Gibbs's behalf, commenced this action against the Government on January 29, 2014, with jurisdiction predicated upon the Tucker Act, 28 U.S.C. § 1491. JA11. USF&G filed an amended complaint on May 9, 2014. JA12, 14.

4

USF&G alleged that Gibbs and its insurers became obligated to pay legal expenses and settlement costs that should have been paid by USPS under the terms of the Gibbs/USPS contract. JA18. USF&G further alleged that, under the circumstances, USF&G was entitled to recover from the Government the $1,560.583.34 that USF&G was required to expend as a result of USPS's wrongful conduct. JA19.

The Government filed a motion to dismiss under Court of Federal Claims Rule 12(b)(1) on May 28, 2014, arguing that the Court of Federal Claims lacked subject matter jurisdiction over the action. JA12; *see also* Mot., Dkt. 19 (May 28, 2014). The Government contended that it had not waived sovereign immunity from USF&G's claim, arguing that the Tucker Act waives claims founded upon contract only where (1) the plaintiff is in privity of contract with the Government; or (2) the plaintiff is <u>not</u> in privity of contract with the Government, but the plaintiff is either (a) an intended third-party beneficiary of that contract, (b) a subcontractor by means of pass-through suit, or (c) a Miller Act surety for funds improperly disbursed to a prime contractor. Because USF&G brought its claim as Gibbs's equitable subrogee, the Government argued that it was immune from suit and that the Court of Federal Claims lacked jurisdiction.

USF&G opposed the motion, which rested entirely upon an excessively restrictive interpretation regarding the scope of the Tucker Act's waiver of

sovereign immunity.    Opp'n, Dkt. 22 (July 3, 2014).    In particular, USF&G demonstrated that the Government's argument conflicts with the Supreme Court's decision in *United States v. Aetna Casualty & Surety Co.*, 338 U.S. 366 (1949), which held that the Federal Tort Claims Act ("FTCA") waives the Government's sovereign immunity from claims brought by general liability insurers as equitable subrogees of parties injured by the Government, and this Court's decision in *Insurance Company of the West v. United States*, 243 F.3d 1367 (Fed. Cir. 2001), which applied the reasoning of *Aetna* to the interpretation of the Tucker Act. Because the Tucker Act, like the FTCA, waives the Government's immunity from particular kinds of claims, and is not restricted to particular categories of claimants, and because USF&G had standing to pursue contractual claims relating to the Gibbs claim USF&G paid on the Government's behalf, the Court of Federal Claims had jurisdiction.  The Government filed a reply on July 21, 2014.  Reply, Dkt. 25 (July 21, 2014).

After a November 13, 2014, oral argument, the Court of Federal Claims issued an Opinion and Order on November 19, 2014, granting the Government's motion to dismiss.    JA02.    The Court below declined to follow *Aetna* and *Insurance Company of the West*.  Instead, relying largely on *Federal Insurance Co. v. United States*, 29 Fed. Cl. 302 (1993), and older decisions of this Court that predate *Insurance Co. of the West*, the decision below first considered whether

6

USF&G was in privity of contract with the Government or whether it fell within one of the "limited exceptions" to privity that the court identified. Those exceptions, the court found, were limited to: "(1) actions against the United States by an intended third-party beneficiary; (2) pass-through suits by a subcontractor where the prime contractor is liable to the subcontractor for the subcontractor's damages; and (3) actions by a Miller Act surety for funds that the government improperly disbursed to a prime contractor." JA05 (citing *First Hartford Corp. Pension Plan & Trust v. United States*, 194 F.3d 1279, 1289 (Fed. Cir. 1999)). The Court below characterized USF&G as "analogiz[ing] its status to that of a Miller Act surety," but rejected that analogy because, in its view, a Miller Act surety completely "steps into the shoes" of a contractor and completes performance, whereas a general liability insurer does not. *Id.*

The court below found "persuasive" a prior decision of the Court of Federal Claims in *Federal Insurance Co. v. United States*, 29 Fed. Cl. 302 (1993). JA06. In particular, the court concurred in *Federal Insurance*'s conclusion that the three-party arrangement between a surety, contractor, and Government, whereby the surety is "as much a party to the Government contract as the contractor," is the key to the surety being able to assert claims against the Government under the Tucker Act in spite of the lack of privity between the surety and the Government. JA06 (quoting *Federal Ins.*, 29 Fed. Cl. at 305 (in turn quoting *Balboa Ins. Co. v. United*

*States*, 775 F.2d 1158, 1160 (Fed. Cir. 1985)) (quotations omitted). A general liability insurer, the court found, is a stranger to the contract between the contractor and the Government and cannot claim the same status as a surety. JA05.

The court rejected USF&G's contention that *Federal Insurance* is inconsistent with the Supreme Court's decision in *Aetna* and this court's decision in *Insurance Company of the West*. The court below asserted that *Insurance Company of the West* merely reaffirmed the principle that sureties can bring claims under the Tucker Act as equitable subrogees, and that the broader language in that case—*viz.*, that the Tucker Act waives immunity from particular "claims" and is not limited to a particular class of claimants—was dictum. JA07-08.

After the court entered judgment on November 21, 2014, USF&G noticed a timely appeal on December 10, 2014. JA01, 13.

## SUMMARY OF THE ARGUMENT

The sole question presented in this appeal is whether the Tucker Act, 28 U.S.C. § 1491(a)(1), waives sovereign immunity with respect to the claim asserted in this action, in which USF&G, as equitable subrogee to its insured, seeks to enforce a contract addendum allocating to the Government the risk of expense and loss arising from personal injury attributable to asbestos removal work performed under a government contract.

The Tucker Act expressly waives sovereign immunity as to "any claim" founded "upon any express or implied contract with the United States," and grants the Court of Federal Claims jurisdiction to hear such claims. *United States v. Mitchell*, 463 U.S. 206 (1983); *Jan's Helicopter Serv., Inc. v. Fed. Aviation Admin.*, 525 F.3d 1299 (Fed. Cir. 2008).

In *United States v. Aetna Casualty & Surety Co.*, 338 U.S. 366 (1949), the Supreme Court construed similar language in the Federal Tort Claims Act ("FTCA") as waiving sovereign immunity from tort claims asserted against the Government by persons who acquired such claims by operation of law, including insurance companies who became equitably subrogated to the claims of their insured. *Aetna* further held that the Anti-Assignment Act does not bar such equitable subrogation claims.

The Federal Circuit in *Insurance Company of the West v. United States*, 243 F.3d 1367 (Fed. Cir. 2001) adopted and applied the reasoning of *Aetna* to the Tucker Act, which—like the FTCA as interpreted in *Aetna*—waives sovereign immunity as to "any claim" within the ambit of the statute. This Court observed that "the language of both acts contains an unequivocal expression waiving sovereign immunity as to claims, not particular claimants," *id.* at 1373-74, and therefore held that "the Tucker Act must be read to waive sovereign immunity for

assignees as well as those holding the original claim, except as barred by a statutory provision such as the Anti-Assignment Act," *id.* at 1375.

The court below erred in failing to follow this Court's decision in *Insurance Company of the West* for at least three reasons. <u>First</u>, the Court of Federal Claims mischaracterized the core analysis in *Insurance Company of the West*, which applied the *Aetna* rationale to the construction of the Tucker Act, as dicta. <u>Second</u>, the court below misread this Court's earlier decision of this Court in *Balboa Insurance Co. v. United States*, 775 F.2d 1158 (Fed. Cir. 1985), as holding that only sureties may assert claims as equitable subrogees under the Tucker Act, despite the absence of any language in *Balboa* limiting such claims to sureties, and notwithstanding this Court's later decision in *Insurance Company of the West* which erased any conceivable uncertainty regarding the scope of equitable subrogee jurisdiction under the Tucker Act.  In misreading *Balboa*, the court below further erred by following two prior Court of Federal Claims decisions (*Federal Insurance Co. v. United States*, 29 Fed. Cl. 302 (1993) and *Travelers Casualty & Surety Co. of America v. United States*, 103 Fed. Cl. 101 (2012)) that similarly went astray.  <u>Third</u>, the Court of Federal Claims erred in holding that USF&G lacks contractual standing because it "has not stepped completely into the shoes of the contractor," thereby disregarding decades of black-letter law holding that equitable subrogees do step into the shoes of the original party, and ignoring the

10

limited scope of USF&G's subrogation claim under the contract addendum, which relates directly to the subject matter of the asbestos liability claim paid by USF&G on behalf of its insured.

Accordingly, the judgment below should be reversed, and this cause remanded to the Court of Federal Claims for decision on the merits

## ARGUMENT

## I.    STANDARD OF REVIEW

Whether the United States has waived sovereign immunity for the equitable subrogation claims of a general liability insurer is a question of law, which this Court reviews *de novo*. *See Banks v. United States*, 741 F.3d 1268, 1275 (Fed. Cir. 2014) (citing *Tex. Peanut Farmers v. United States*, 409 F.3d 1370, 1372 (Fed. Cir. 2005); *Ins. Co. of the West*, 243 F.3d at 1370 ("Whether the United States has waived sovereign immunity for the equitable subrogation claims of a surety is a question of law, which we therefore review without deference.") (citing *Khan v. United States*, 201 F.3d 1375, 1377 (Fed. Cir. 2000)). In considering that question, this Court must accept USF&G's allegations as true and draw all reasonable inferences in its favor. *See Trusted Integration, Inc. v. United States*, 659 F.3d 1159, 1163 (Fed. Cir. 2011); *Reynolds v. Army & Air Force Exch. Servs.*, 846 F.2d 746, 747 (Fed. Cir. 1988).

11

## II.    THE TUCKER ACT WAIVES SOVEREIGN IMMUNITY FROM AND PROVIDES JURISDICTION OVER CLAIMS BY EQUITABLE SUBROGEES THAT ARE FOUNDED UPON CONTRACTS WITH THE GOVERNMENT.

### A.    The Express Language Of The Tucker Act Waives Sovereign Immunity With Respect To All "Claims" Founded Upon Contracts With The Government.

The Tucker Act provides, in relevant part:

> The United States Court of Federal Claims shall have jurisdiction to render judgment upon <u>any claim</u> against the United States <u>founded</u> either upon the Constitution, or any Act of Congress or any regulation of an executive department, or <u>upon any express or implied contract with the United States</u>, or for liquidated or unliquidated damages in cases not sounding in tort.

28 U.S.C. § 1491(a)(1) (emphasis added).  This statute serves simultaneously as a waiver of sovereign immunity and a jurisdictional grant for the claims against the Government founded upon Government contracts.  *United States v. Mitchell*, 463 U.S. 206, 212 (1983); *Jan's Helicopter Serv., Inc. v. FAA*, 525 F.3d 1299, 1306 (Fed. Cir. 2008).

The plain meaning of this language could not be clearer:  sovereign immunity is waived, and jurisdiction exists, with respect to all "claims" that arise from "any express or implied contract with the United States."  Notably, the statutory language of the Tucker Act does not limit the type or category of claimants who may assert such claims.  Indeed, the Supreme Court has noted that the jurisdiction of the Court of Federal Claims "over contract claims against the

12

government has long been recognized, and government liability in contract is viewed as perhaps the widest and most unequivocal waiver of federal immunity from suit." *Mitchell*, 463 U.S. at 215 (citations and quotation marks omitted).

**B.      The Tucker Act And Similar Statutory Waivers of Sovereign Immunity As To "Claims," As Construed By This Court And The Supreme Court, Extend To Equitable Subrogees.**

For more than sixty years, the Supreme Court and other courts have construed statutory waivers of sovereign immunity as to particular types of "claims," such as the Federal Tort Claims Act and the Tucker Act, to extend to claimants who accede to such claims by operation of law. The decisions of this Court and the Supreme Court compel the conclusion that insurers like USF&G, who are equitably subrogated to the rights of their insureds through payment of claims, may bring claims against the Government under the Tucker Act.

**1.      In *Aetna*, The Supreme Court Definitively Construed The FTCA's Waiver Of Sovereign Immunity As To "Claims" To Include Claims Asserted By Equitable Subrogees.**

In *United States v. Aetna Casualty & Surety Co.*, 338 U.S. 366 (1949), the Supreme Court held that claims brought by several general liability insurers under the FTCA as equitable subrogees of their insureds were <u>not</u> barred by sovereign immunity. The insurers pursuing claims against the Government in *Aetna* became subrogated to the rights of their insureds in various ways. Three of the plaintiff insurers in *Aetna* had paid insurance claims to their insureds, who had been injured

13

through the negligence of Government employees.  As a consequence, the insurers

become equitable subrogees up to the amounts they had paid with respect to the

claims for personal injury.  *Id.* at 368-69.[1]

The insurers brought lawsuits against the Government under the FTCA,

which at the time[2] provided:

> [T]he United States district court for the district wherein
> the plaintiff is resident or wherein the act or omission
> complained of occurred, * * * sitting without a jury, shall
> have exclusive jurisdiction to hear, determine, and render
> judgment on <u>any claim against the United States</u>, for
> money only, * * * on account of damage to or loss of
> property or on account of personal injury or death caused
> by the negligent or wrongful act or omission of any
> employee of the Government while acting within the
> scope of his office or employment[.]

*Id.* at 369-70 (emphasis added).  The question before the Court in *Aetna* was

whether sovereign immunity or the Anti-Assignment Act, 28 U.S.C. § 3727, barred

an action against the Government by an insurer as equitable subrogee of its

insured.

The Supreme Court rejected the Government's argument that the FTCA's

waiver of immunity does not extend to equitable subrogees, stating that the

---

[1] Another of the *Aetna* plaintiff insurers had paid a claim under the New York
Workman's Compensation Law which, under state law, effectuated an assignment
of the injured worker's claim to the insurer.  *Id.* at 368.

[2] The statute is not materially different today, as it still provides the district courts
with exclusive jurisdiction of civil actions on "<u>claims</u> against the United States, for
money damages."  28 U.S.C. § 1346(b)(1) (emphasis added).

14

FTCA's waiver of immunity as to "claims" is sufficiently broad to include claims brought by a plaintiff that acquired its interest as a result of a transfer by operation of law. *Id.* at 383.

The Court also found that the Anti-Assignment Act does not bar claims, like the equitable subrogation claim pursued by USF&G here, where the claimant acquired the claim as a result of a "transfer[] by operation of law." *See Aetna*, 338 U.S. at 373-74 (citing *Erwin v. United States*, 97 U.S. 392, 397 (1878)). *Aetna* held a transfer of rights from insured to insurer as a result of the insurer's payment of a claim to be a transfer by operation of law under the doctrine of equitable subrogation, and consequently beyond the reach of the Anti-Assignment Act. *Id.* at 368-69, 380-81.

*Aetna* therefore concluded that the general liability insurer plaintiffs in that case had standing to pursue claims directly against the Government as equitable subrogees (indeed, the Court stated that the insurers were the <u>only</u> real parties in interest who could pursue such claims up to the amounts they had paid to their insureds), and that the FTCA waived the Government's immunity from their claims to the same extent as the original claimants'. *Id.* at 380-83.

**2.    This Court's Decision In *Insurance Company of the West* Adopted And Applied The Reasoning Of *Aetna* To Claims Brought By Equitable Subrogees Under The Tucker Act.**

The Federal Circuit applied the *Aetna* sovereign immunity analysis to the Tucker Act in *Insurance Company of the West,* 243 F.3d 1367 (Fed. Cir. 2001). The question presented, as framed by the Court, was "whether a subrogee, after stepping into the shoes of a government contractor, may rely on the waiver of sovereign immunity in the Tucker Act, 28 U.S.C. § 1491, and bring suit against the United States." *Id.* at 1369. The Court answered that question in the affirmative, holding that the Tucker Act provided jurisdiction for a claim brought against the United States by a Miller Act surety as equitable subrogee of a government contractor, to recover payments due under a government contract. *Id.* at 1369-70, 1375.

The Government argued that the Tucker Act could not be interpreted as waiving its immunity from claims founded on contract brought by equitable subrogees of a government contractor. *Id.* at 1371. This Court disagreed, relying explicitly on the Supreme Court's decision in *Aetna*, which this Court read as "directly [holding] that Congress's waiver of sovereign immunity under the [FTCA] included suits by subrogees." *Id.* at 1373.

*Insurance Company of the West* found no reason to ascribe a different meaning to the word "claim" as used in the Tucker Act from the word "claim" as

16

used in the FTCA. *Id.* at 1373. In particular, this Court expressly rejected the Government's argument "that the waiver in *Aetna* was somehow dependent on the language of the Federal Tort Claims Act, and that a similar waiver would not apply to suits under the Tucker Act." *Id.* Instead, the Federal Circuit explained:

> *Aetna* reflects a broader and more generally applicable legal principle: waivers of sovereign immunity applicable to the original claimant are to be construed as extending to those who receive assignments, whether voluntary assignments or assignments by operation of law, where the statutory waiver of sovereign immunity is not expressly limited to waivers for claims asserted by the original claimant.

*Id.* "The language of both acts contains an unequivocal expression waiving sovereign immunity as to claims, not particular claimants." *Id.* at 1373-74. The Federal Circuit therefore "conclude[d] that the Tucker Act must be read to waive sovereign immunity for assignees as well as those holding the original claim, except as barred by a statutory provision such as the Anti-Assignment Act," and concluded that the Tucker Act waived sovereign immunity from the claims at issue. *Id.* at 1375.

*Insurance Company of the West* follows *Aetna* in recognizing that the Anti-Assignment Act does not bar claims that are transferred by operation of law, such

as claims acquired through equitable subrogation.[3]    Indeed, as this Court recognized in *Insurance Company of the West*, the fact that Congress enacted the Anti-Assignment Act at all necessarily presumes that claims by assignees would otherwise have been honored by the Government.  243 F.3d at 1374 (summarizing common law rights of assignees).  Moreover, the Tucker Act was enacted in 1887, 24 Stat. 505 (1887), after the Supreme Court had construed the Anti-Assignment Act as not barring claims that were assigned by operation of law.  *See St. Paul & Duluth R.R. Co. v. United States*, 112 U.S. 733, 736 (1885); *Erwin v. United States*, 97 U.S. at 397; *United States v. Gillis*, 95 U.S. 407 (1877).  On notice that it could not count on the Anti-Assignment Act to preclude claims that were transferred by operation of law, Congress nevertheless enacted the Tucker Act waiving immunity from "claims" founded upon contracts, without further limiting the class of claimants who could pursue such claims.

> ### 3. *Insurance Company Of The West* Correctly Interpreted The Tucker Act As Providing Jurisdiction For Claims Asserted By Persons Who Acceded To Their Interests By Operation Of Law.

This Court's construction of the Tucker Act in *Insurance Company of the West* was correct.  The Tucker Act and FTCA are similarly worded in that the

---

[3] In any event, the Anti-Assignment Act does not apply to contracts with the USPS, so the Act cannot bar this action.  *See* 39 U.S.C. § 410(a) (stating that "no Federal law dealing with public or Federal contracts" applies to the USPS except as specifically set out in that section; the Anti-Assignment Act is not listed).

FTCA waives immunity from "claims against the United States, for money damages" and the Tucker Act waives immunity from a "claim against the United States … founded upon any express or implied contract with the United States." 28 U.S.C. §§ 1346(b)(1), 1491(a)(1).  Neither Act explicitly limits the waiver to claims asserted by the original claimant,[4] and the Supreme Court has found that both should be interpreted broadly.  *See, e.g.*, *Aetna*, 338 U.S. at 383 (rejecting the argument, advanced by the Government, that the FTCA waiver of immunity should be construed narrowly, observing that "[t]he exemption of the sovereign from suit involves hardship enough, where consent has been withheld.  We are not to add to its rigor by refinement of construction, where consent has been announced.") (citations and quotation marks omitted); *Mitchell*, 463 U.S. at 219 (adopting this language from *Aetna* in a Tucker Act case).

By contrast, in other statutory waivers of sovereign immunity, where Congress intended to limit the waiver to the original claimant, it has done so expressly.  For example, the Contract Disputes Act covers "claim[s] <u>by a contractor</u> against the Federal Government relating to a contract," 41 U.S.C. § 7103(a)(1) (emphasis added), and defines "contractor" as "a party to a Federal

---

[4] Similarly, the D.C. Circuit has interpreted the Little Tucker Act, 28 U.S.C. § 1346(a), as providing the district courts with jurisdiction over claims against the United States founded upon contract, not exceeding $10,000 in amount, when those claims are brought by an assignee or surety as equitable subrogee.  *See Indus. Bank of Wash. v. United States*, 424 F.2d 932, 933-34 (D.C. Cir. 1970).

Government contract other than the Federal Government," 41 U.S.C. § 7101(7). This Court has construed the CDA as strictly prohibiting claims by any party other than the contractor, including claims by sureties and other equitable subrogees who step into the shoes of a party to the contract; in doing so, it has explicitly distinguished CDA claims from claims brought under the Tucker Act. *See Fireman's Fund Ins. Co. v. England*, 313 F.3d 1344, 1350-52 (Fed. Cir. 2002) (distinguishing claims brought under the Tucker Act in *Balboa* and *Insurance Company of the West*, and the claims brought under the FTCA in *Aetna*, on the ground that the Tucker Act and FTCA do not require the plaintiff to be a "contractor").

Finally, decisions of the Court of Claims, this Court's predecessor, confirm that the Tucker Act's waiver of sovereign immunity applies broadly to "claims" of the kind enumerated in the Tucker Act, and is not limited to particular types of claimants. In *Mason v. United States*, 461 F.2d 1364 (Ct. Cl. 1982) ("*Mason I*"), *reversed on other grounds*, *United States v. Mason*, 412 U.S. 391 (1973) ("*Mason II*"), the Court of Claims and the Supreme Court asserted jurisdiction over a claim brought under the Tucker Act by the state-court-appointed administrators of a decedent's estate, claiming that the Government breached fiduciary duties to the decedent, even though the claim was not brought by the original claimant. *Mason I*, 461 F.2d at 1367-68; *Mason II*, 412 U.S. at 392-94 & n.5. The Court of Claims

20

specifically addressed the question of whether the Tucker Act conferred jurisdiction over the administrators' claim, and concluded that they had validly asserted "a claim founded upon an Act of Congress and for damages in cases not sounding in tort," *Mason I*, 461 F.2d at 1374 (quotation omitted), and awarded judgment to the administrators, *id.* at 1379. The Supreme Court reversed on the merits of the breach of fiduciary duty claim asserted by the administrators, but never questioned the Court of Claims' jurisdictional conclusion on appeal, and specifically noted that the case had been brought pursuant to the Tucker Act. *Mason II*, 412 U.S. at 400. Similarly, the Court of Claims held in *Hebah v. United States*, 428 F.2d 1334 (Ct. Cl. 1970) that the Tucker Act gave the court jurisdiction to hear the plaintiff's claim, which was founded upon a contract with the Government, even though she was not a party to the contract, because "that broad statute is not limited as to the class of plaintiffs who may sue." *See id.* at 1339.

Thus, the plain language of the Tucker Act, as illuminated by the Supreme Court's decision in *Aetna* and this Court's decision in *Insurance Company of the West*, provides jurisdiction with respect to claims founded upon contracts with the Government that are asserted by equitable subrogees in the Court of Federal Claims.

**C.    Equitable Subrogees, Including Plaintiffs-Appellants Here, "Stand In The Shoes" Of Federal Contractors For Purposes Of Asserting Rights Relating To Claims They Have Paid.**

USF&G, as equitable subrogee to its insured, has standing to pursue the claims at issue in this case.  It is hornbook law that equitable subrogees like USF&G have standing to pursue contract claims as parties who "stand in the shoes" of one of the original parties to the contract.[5]

Contracts to which the United States is a party are governed by the federal common law of contracts, and must "be construed and the rights and duties of the parties determined by application of the same principles of law as if the contract were between private individuals."  *Roedler v. Dep't of Energy*, 255 F.3d 1347, 1351 (Fed. Cir. 2001); *see also United States v. Winstar Corp.*, 518 U.S. 839, 895 (1996); *Clearfield Trust Co. v. United States*, 318 U.S. 363, 366-67 (1943);

---

[5] Although this Court has at times referred to this contractual standing requirement as "jurisdictional" in nature, *see, e.g.*, *U.S. Marine, Inc. v. United States*, 722 F.3d 1360, 1373 (Fed. Cir. 2013), it is more appropriately characterized as an issue relating to the merits of a contract claim.  Subject-matter jurisdiction exists for all "claims" founded upon contracts with the United States, not merely for successful claims or claims brought by certain parties.  *See, e.g.*, *Total Med. Mgmt. v. United States*, 104 F.3d 1314, 1319 (Fed. Cir. 1997) (Government's contention that contract was not "enforceable" went to the merits rather than to jurisdiction); *cf. Fisher v. United States*, 402 F.3d 1167, 1172 (Fed. Cir. 2005) (question of Tucker Act jurisdiction is resolved by looking to whether the claim is founded upon a money-mandating provision; whether the plaintiff is one who can pursue that remedy is a question for the merits).  Accordingly, whether a particular party can succeed in his pursuit of a contractual claim against the Government is more properly characterized as a merits issue than a jurisdictional one.  *See Arbaugh v. Y&H Corp.*, 546 U.S. 500, 514-15 (2006) (limitation on claim not jurisdictional unless so labeled by statute).

*Anderson v. United States*, 344 F.3d 1343, 1353 n.4 (Fed. Cir. 2003). The common law of contracts requires a party enforcing a contract or suing on a breach to be either a party to the contract (*i.e.*, that it be in "privity of contract" with the Government) or a third party who "stands in the shoes" of a party to the contract. *See Sullivan v. United States*, 625 F.3d 1378, 1380 (Fed. Cir. 2010) (citations omitted).

This Court's precedents have recognized several situations in which a third party "steps into the shoes" of one of the parties to a contract for purposes of enforcing a contract involving the Government, including, among others: (1) an intended third-party beneficiary of a contract, *see Roedler*, 255 F.3d at 1351 ("[T]hird party beneficiaries of a contract to which the United States is a party may assert a claim against the United States, in accordance with the law governing third party claims[.]"); (2) an assignee of a contract (so long as the assignment is valid under the Anti-Assignment Act), *see Amber Res. Co. v. United States*, 538 F.3d 1358, 1378-79 (Fed. Cir. 2008) (stating that a general principle of contract law is that an assignee "stands in the shoes" of the assignor and "the assignment of a contract includes the assignment of the right to enforce the contract"); and (3) where an original party to a contract sues the Government on a contract it made with a third party after the Government acquires that third party through forfeiture, *see Hardie v. United States*, 19 Fed. App'x 899, 905-906 (Fed. Cir. 2001).

23

Similarly, it is well established that an equitable subrogee "steps into the shoes" of one of the parties to the contract for purposes of enforcement. Subrogation arises in instances where an insurer has paid a "loss suffered by the insured" and therefore, as a matter of equity, becomes "the only real party in interest" who can pursue a claim against the third party who caused the loss. *See, e.g.*, *Aetna*, 338 U.S. at 381; *see also id.* at 368-69 (stating that insurers who paid insurance claims to and on behalf of their insureds became subrogated to the insureds' rights and claims). "As a general rule, subrogation applies where a party not acting voluntarily, but under some compulsion pays a debt or discharges an obligation for which another is primarily liable and which in equity and good conscience ought to be discharged by the latter." *First Nat'l City Bank v. United States*, 548 F.2d 928, 936 (Ct. Cl. 1977) (citations omitted); *id.* ("One who pays another's debt to protect his own rights and interests is not ordinarily considered a volunteer and may be subrogated to the creditor's rights.") (citations omitted); *Krueger v. Cartwright*, 996 F.2d 928, 931-32 (7th Cir. 1993) ("The general rule in federal court is that if an insurer has paid the entire claim of its insured, the insurer is the real party in interest under Federal Rule of Civil Procedure 17(a) and must sue in its own name.") (citing *Aetna*, 338 U.S. at 380-81; 5 Jeffrey E. Thomas, New Appleman on Insurance Law Library Edition § 49.02[3][b] (2013) (insurer that pays a loss to or on behalf of its insured is equitably subrogated to rights that

the insured may have against third parties); 23 Williston on Contracts, § 61:51 (4th ed. 2014) (subrogation "is broad enough to include every instance in which one person, not a mere volunteer, pays a debt for which another is primarily liable and which in equity and good conscience should have been discharged by the latter").

The effect of subrogation is that "the subrogee 'stands in the place' of the original creditor and obtains equivalent but no greater rights against the debtor than held by the original creditor." *First Nat'l City Bank*, 548 F.2d at 936 (citations omitted); *US Airways, Inc. v. McCutchen*, 133 S. Ct. 1537, 1546 n.5 (2013) ("Subrogation simply means substitution of one person for another; that is, one person is allowed to stand in the shoes of another and assert that person's rights against a third party.") (quotation omitted); *United States v. Munsey Trust Co. of Washington, D.C.*, 332 U.S. 234, 242 (1947) ("One who rests on subrogation stands in the place of one whose claim he has paid, as if the payment giving rise to the subrogation had not been made.").[6]

In this case, it is uncontested that USF&G pled facts sufficient to support a claim that it is Gibbs's equitable subrogee with respect to the Gibbs claim USF&G

---

[6] The Supreme Court has found that even <u>the Government</u> can take advantage of the doctrine of equitable subrogation to "stand[] in the place of one whose claim [it] has paid." *See United States v. California*, 507 U.S. 746, 756 (1993) (quotation omitted) (finding that, where Government paid $11 million in taxes to the State of California on behalf of its contractor, the Government was subrogated to the contractor's right to sue the State for a refund).

paid on the Government's behalf: Gibbs suffered a loss when it was sued by Mr. Wilson and settled the claim; USF&G had an obligation to defend and indemnify Gibbs under insurance policies issued to Gibbs; USF&G paid legal expenses and settlement costs on behalf of Gibbs; Gibbs had claims against the Government for breach of contract arising from the Government's refusal to hold harmless and indemnify Gibbs with respect to Mr. Wilson's suit; USF&G would not have had to make the payments but for the Government's refusal to fulfill the terms of its contract with Gibbs; and justice clearly requires that the Government, which undertook an obligation to hold harmless and indemnify Gibbs for precisely these types of claims in order to have Gibbs complete work on the contract at a lower price, make good on its obligation. JA16-19.   Indeed, the Court below acknowledged that USF&G became Gibbs' equitable subrogee when it paid the Wilson claim.  JA07, 08-09.

Accordingly, USF&G "step[ped] into the shoes" of Gibbs and, under *Aetna* and *Insurance Company of the West*, has standing to assert a claim against the Government with respect to the cost of defending and settling the Wilson lawsuit to the same extent that Gibbs had such a claim under its contract with USPS.

26

## III.  THE COURT OF FEDERAL CLAIMS ERRED IN FAILING TO FOLLOW THIS COURT'S DECISION IN *INSURANCE COMPANY OF THE WEST*, AND MISCONSTRUED OTHER DECISIONS.

### A.  The Court Below Mischaracterized The Key Rulings In *Insurance Company Of The West* As Dicta.

The Court of Federal Claims declined to follow this Court's decision in *Insurance Company of the West* because it erroneously characterized the core reasoning of that case as dictum.  Specifically, the Court below asserted that this Court's statement that "[t]he language of both [the FTCA and Tucker Act] contains an unequivocal expression waiving sovereign immunity as to claims, not particular claimants," 243 F.3d at 1373-74, and related observations regarding the scope of the Tucker Act's waiver of immunity, were "dicta unnecessary to the otherwise narrow holding."  JA08.  Contrary to the conclusion reached by the Court of Federal Claims, the analysis set forth in *Insurance Company of the West* was necessary to the decision the Court reached.

The Federal Circuit had recognized for many years prior to *Insurance Company of the West* that a surety could bring an action against the Government under the Tucker Act to recover payments made to a contractor after the surety had notified the government of the contractor's default.  *Ins. Co. of the West*, 243 F.3d at 1369-70 (citing *Balboa*, 775 F.2d at 1161-63).  That line of cases had been based on certain Supreme Court decisions involving sureties, including *Prairie State Bank v. United States*, 164 U.S. 227 (1896); *Henningsen v. United States Fidelity*

27

& *Guaranty Co.*, 208 U.S. 404 (1908); and *Pearlman v. Reliance Ins. Co.*, 371 U.S. 132 (1962).  In *Insurance Company of the West*, however, the Government contended that the Supreme Court's more recent decision in *Department of the Army v. Blue Fox, Inc.*, 525 U.S. 255 (1999) had undermined Federal Circuit decisions based on those Supreme Court cases and that sureties could no longer rely upon the Tucker Act's waiver of sovereign immunity to bring a claim against the Government.  *Id.* at 1370.

Blue Fox involved a subcontractor seeking to recover funds from the Government on an equitable lien theory under the Administrative Procedure Act ("APA").  525 U.S. at 259-60; *see also id.* at 260 (stating that the Tucker Act was "not involved" in the case).  The Supreme Court held that the claim was best viewed as a claim for money damages, which is prohibited under the APA, and that the subcontractor therefore could not rely on the APA's waiver of sovereign immunity to bring its claim.  *Id.* at 261-63.  The subcontractor resisted, arguing that the Supreme Court's decisions in *Prairie State Bank*, *Henningsen*, and *Pearlman,* "examining a surety's right of equitable subrogation . . .  suggested that subcontractors and suppliers can seek compensation directly against the Government."  *Id.* at 264.  The Supreme Court stated that none of these cases "involved a question of sovereign immunity" and that they "did not disturb [] the established rule that, unless waived by Congress, sovereign immunity bars

subcontractors and other creditors from enforcing liens on Government property or funds to recoup their losses." *Id.* at 265.

The Government in *Insurance Company of the West* seized on the *Blue Fox* Court's characterization of *Prairie State Bank*, *Henningsen*, and *Pearlman* as not "involv[ing] a question of sovereign immunity" and contended that the Federal Circuit's precedents finding a waiver of sovereign immunity in the Tucker Act for a surety's claim against the Government were no longer good law. 243 F.3d at 1371. This Court agreed that, because *Balboa* and other decisions relied upon *Prairie State*, *Henningsen*, and *Pearlman* to find a waiver of sovereign immunity for sureties, this Court could "no longer rely on those three cases to find a waiver of sovereign immunity." *Id.* at 1372.

The *Insurance Company of the West* Court therefore looked to see whether there was some other basis for finding that the Government waived its sovereign immunity from the claim at issue. It found that basis in the express language of the Tucker Act waiving the government's immunity from "claims" founded upon contract, as illuminated by the Supreme Court's holding in *Aetna* that the FTCA waives sovereign immunity for claims by equitable subrogees as well as by the original claimants. *Id.* at 1372-75.

*Insurance Company of the West*'s interpretation of Tucker Act jurisdiction as extending to all claims founded upon contracts with the Government, including

29

claims asserted by equitable subrogees, therefore was a necessary part of its analysis. The Court could not have found Tucker Act jurisdiction over the plaintiff's claim in the absence of this interpretation that the Tucker Act extends jurisdiction to specified "claims," without regard to whether the claim is asserted by the original claimant or by an equitable subrogee. While the ultimate <u>holding</u> of the case was that a surety who finances the completion of a government contract is entitled to pursue a claim under the Tucker Act (because that was the particular situation presented in *Insurance Company of the West*), this Court's construction of the Tucker Act, including its reliance upon the Supreme Court's decision in *Aetna,* cannot be disregarded as mere "dicta."

**B.   The Cases Cited In The Decision Below Do Not Support The Overly Restrictive Construction Of The Tucker Act Adopted By The Court Of Federal Claims.**

In reaching its decision, the Court below misread *Balboa Insurance Co. v. United States*, 775 F.2d 1158 (Fed. Cir. 1985) as holding that <u>only</u> sureties can assert claims as equitable subrogees under the Tucker Act, and relied upon prior Court of Federal Claims decisions in *Federal Insurance Co. v. United States*, 29 Fed. Cl. 302 (1993) and *Travelers Casualty & Surety Co. of America v. United States*, 103 Fed. Cl. 101 (2012) that similarly misread *Balboa*. *Balboa* did not, however, hold that sureties are the only equitable subrogees that are entitled to invoke Tucker Act jurisdiction. Moreover, even if *Balboa* could once have been

read to support the restrictive interpretation advanced by the Court below, that interpretation could not have survived this Court's subsequent decision in *Insurance Company of the West*. *Balboa* therefore provides no support for the restrictive interpretation of the Tucker Act adopted by the Court of Federal Claims in the decision below and in that Court's prior *Federal Insurance* and *Travelers* decisions.

In *Balboa*, the plaintiff, a Miller Act surety for a government contractor, assumed responsibility for contract completion under performance bonds when the contractor defaulted, and brought an action in the Court of Federal Claims to recover amounts that the Government should have paid to the surety rather than to the contractor. The Court rejected the Government's argument that, under a longstanding body of law regarding subcontractors and materialmen, sureties are barred from asserting Tucker Act claims for lack of privity; the Court found instead that sureties are in a materially different position. 775 F.2d at 1160. The Court then identified several potential bases upon which sureties might bring Tucker Act claims. The most appropriate way for a surety to assert contractual rights against the Government, the Court found, "is under the doctrine of equitable subrogation." *Id.* at 1161. The *Balboa* Court was persuaded by Supreme Court decisions recognizing that sureties are "entitled to assert the equitable doctrine of subrogation," *id.* (quoting *Prairie State Bank*, 164 U.S. at 231), and a decision of

31

the former Court of Claims stating that a "surety [is] entitled to the benefit of all the rights of . . . the contractor whose debts it paid.  The surety then is subrogated to the rights of the contractor who could sue the government since it was in privity of contract with the United States," *id.* (quoting *United States Fidelity & Guaranty Co. v. United States*, 475 F.2d 1377, 1382 (Ct. Cl. 1973)).

*Balboa* recognized that sureties may sue under the Tucker Act as equitable subrogees, but *Balboa* did not hold that sureties are the <u>only</u> equitable subrogees that may invoke Tucker Act jurisdiction.  *Balboa* simply cannot be read as silently overruling more than a century of common law on the doctrine of equitable subrogation—including the Supreme Court's own understanding of that doctrine—by limiting the application of that doctrine to instances in which a surety completes performance or finances the completion of performance of a contract after default.  *See also* Williston on Contracts, § 61:51 ("Suretyship does not furnish the only application of the doctrine of subrogation, but it furnishes the most common one.").  Instead, *Balboa* reaffirms the basic principle that a surety can be an equitable subrogee and can assert any rights it obtains as a result of that status— nothing more.[7]

---

[7] If it were not already sufficiently clear from the Court's analysis that *Balboa* did not purport to constrain the doctrine of equitable subrogation, *Balboa* made it abundantly clear by citing *First National City Bank* in support of its conclusion that an equitable subrogee can accede to rights vis-à-vis the Government.  The plaintiff bank in *First National City Bank* had become an equitable subrogee by

Moreover, to the extent there could ever have been any doubt about the proper interpretation of *Balboa*, this Court's subsequent decision in *Insurance Company of the West* erased any such uncertainty. As discussed in more detail above, *Insurance Company of the West* adopted and applied the rationale of the Supreme Court's decision in *Aetna*, in interpreting the Tucker Act to extend jurisdiction to equitable subrogees of government contractors except to the extent such jurisdiction is barred by an express statutory provision such as the Anti-Assignment Act. *Insurance Company of the West* cannot possibly be read to limit such jurisdiction to sureties and to exclude other equitable subrogees, because the plaintiffs in *Aetna* included insurers who became equitable subrogees in precisely the manner in which USF&G became equitably subrogated to the claims in this case: by operation of law upon paying claims of their insureds. *See supra* Section II(B).

The decision below also erred to the extent it relied on the earlier decisions of the Court of Federal Claims in *Federal Insurance* and *Travelers*, which misconstrued *Balboa* in the same way. *Federal Insurance*, in particular, read *Balboa* as holding that a surety can assert a claim under the Tucker Act <u>only</u> because it is in a "three-party agreement" with the contractor and the Government,

---

paying a claim on behalf of another bank that had a relationship with the Government, and had acceded to that bank's rights against the Government; no suretyship arrangement was at issue. 548 F.2d at 935-36.

and is considered "as much a party to the Government contract as the contractor."
29 Fed. Cl. at 305 (quotations omitted). Based upon this unduly narrow reading of
*Balboa*, *Federal Insurance* erroneously concluded that a general liability insurer
can never assert a Tucker Act claim as an equitable subrogee. That reading of
*Balboa*, as discussed above, is simply wrong: *Balboa* did not purport to foreclose
the application of the Tucker Act to other equitable subrogees. Moreover, *Federal
Insurance* predated this Court's decision in *Insurance Company of the West*. To
the extent *Federal Insurance* ever had any vitality, it certainly did not survive
*Insurance Company of the West*. Thus, the Court below erred by relying on
*Federal Insurance*.[8]

### C.    It Is Well-Established That Equitable Subrogees "Stand In The Shoes" Of Contractors And Have Standing To Sue.

Although it recognized that USF&G is an equitable subrogee, the Court of
Federal Claims found that USF&G did not have standing to assert contractual
rights against the Government because, in that Court's view, USF&G is not the

---

[8] The Court of Federal Claims's later decision in *Travelers* followed *Federal
Insurance* and suffers from the same infirmities. Although the *Travelers* decision
contains little analysis, the Court found that an insurer as equitable subrogee could
not bring a claim against the Government because: (1) it read *Insurance Company
of the West* as holding only that sureties as equitable subrogees can step into the
shoes of government contractors and assert contract claims; (2) it dismissed the
broader language of *Insurance Company of the West* as dictum; and (3) it adopted
the rationale of *Federal Insurance*. *Id*. at 104-05. Each of these bases for decision
is wrong for the reasons discussed elsewhere in this brief. Thus, the court below
erred in relying on *Travelers* to conclude that USF&G cannot pursue its claim in
this case.

right <u>kind</u> of equitable subrogee.  In particular, the Court below asserted that an insurer that pays a contractor's insurance claim, unlike a surety who assumes a contractor's obligation, does not step "completely" into the shoes of the contractor to which it is subrogated:

> [T]he reason USF&G lacks standing in this case is not simply because it is not the "original claimant" (*i.e.* not in privity with the government).  Rather, it lacks standing because, unlike a surety, it has not stepped completely into the shoes of the contractor.  Here, unlike the plaintiff in [*Insurance Company of the West*] or the plaintiffs in *Balboa* and related cases, USF&G did not owe any contractual obligations to the United States or vice versa.  Its contractual obligations were to its insured, Gibbs.  Therefore USF&G did not step into the shoes of the contractor (or "original claimant") in the same sense that the court of appeals concluded that the sureties had done in *Balboa*, [*Insurance Company of the West*], and related cases.

JA08.  The decision below is not only inconsistent with *Aetna* and *Insurance Company of the West*, but proceeds from a fundamental failure to recognize the direct relationship between the amounts paid by USF&G (defense and settlement costs in an asbestos personal injury claim) and the specific provision of the government contract that USF&G seeks to enforce (which allocated to the Government the risk associated with such claims).

   Subrogation is a right-specific, rather than a party-specific doctrine.  An equitable subrogee is only subrogated to the rights of the subrogor that relate to the obligation that the subrogee paid, rather than <u>all</u> of the subrogor's rights.  *See*

*United States v. California*, 507 U.S. at 756 (Government subrogated only to contractor's right to recover tax overpayments); *Dependable Ins. Co. v. United States*, 846 F.2d 65, 67 (Fed. Cir. 1988) (equitable subrogees of contractor not entitled to recover from Government based on other contracts unrelated to contracts under which subrogee paid the contractor's debt); Williston on Contracts, § 61:51 ("Subrogation is generally understood to mean putting one to whom <u>a particular right</u> does not legally belong in the position of the legal owner of the right[.]") (emphasis added).   Invocation of equitable subrogation is therefore permissible so long as the subrogee has acceded to the <u>particular rights that it is attempting to enforce</u>.  No subrogee "completely" or "fully" steps into the shoes of a subrogor for all purposes.  Moreover, the subrogee can obtain no greater rights than were previously possessed by the party to whom it is subrogated.  *See Munsey Trust Co.*, 332 U.S. at 242.

In this case, USF&G became subrogated to Gibbs' rights under the "Asbestos Removal/Repair Liability" addendum to the contract between Gibbs and the Government, which allocated to the Government the risk of expense and liability arising from personal injury attributable to the asbestos removal work, and obligated the Government to "save harmless and indemnify" Gibbs against such expense and liability.  Having paid Gibbs' legal expenses and settlement costs in the Wilson personal injury lawsuit, USF&G "stands in Gibbs's shoes" with respect

to the subject matter of that lawsuit and is subrogated to Gibbs' rights under the contract addendum—no more and no less. As demonstrated in Section II(C), *supra*, this is a classic example of equitable subrogation in which an insurer pays a claim, stands in the shoes of its insured, and indeed becomes "the only real party in interest" with standing to sue.

The Court below conflated the scope of subrogation available to a surety that assumes <u>all</u> of the contractor's obligations on a particular Government contract with the more limited scope of subrogation available to an insurer that pays a loss or claim relating to a Government contract. The Court below thus erroneously concluded that because USF&G, "unlike a surety . . . has not stepped completely into the shoes of the contractor," USF&G has no standing whatsoever to assert its subrogation claim under the Tucker Act. But USF&G is not asserting a claim to recover the contract price or to enforce other provisions of the contract unrelated to the Wilson asbestos personal injury claim. Rather, USF&G's claim is narrowly targeted to enforce rights under the "Asbestos Removal/Repair Liability" addendum, which was included in the contract for the specific purpose of allocating the risk of asbestos-related personal injury claims to the Government.

In any event, even a surety does not "step[] completely into the shoes of the contractor." Rather, the surety's subrogation rights are limited to that portion of the contract work completed by the surety, and do not extend, *e.g.*, to the

37

contractor's rights against the Government under <u>other</u> contracts (*see Dependable Ins. Co.*, 846 F.2d at 67, discussed *supra*), or even to progress payments that accrued prior to the time that the surety assumed responsibility for the contract.

Accordingly, in this case, USF&G was equitably subrogated to its insured's rights under the "Asbestos Removal/Repair Liability" addendum, and has standing to assert those rights in this action against the Government.  The Court of Federal Claims' observation that USF&G has not "stepped completely into the shoes of the contractor" affects the scope of the equitable subrogation rights available to USF&G, not the existence of Tucker Act jurisdiction or USF&G's standing to pursue this particular equitable subrogation claim.

## <u>CONCLUSION</u>

For the foregoing reasons, the judgment of the Court of Federal Claims should be reversed and the cause remanded for consideration of the merits.

Dated:   February 17, 2015              Respectfully submitted,


                                        By:   /s/ Richard L. McConnell

                                        Richard L. McConnell*
                                        Brendan J. Morrissey
                                        WILEY REIN LLP
                                        1776 K Street, NW
                                        Washington, DC 20006
                                        Tel: (202) 719-7000
                                        Fax: (202) 719-7049
                                        *Counsel of Record*

                                        *Counsel for Appellants*

**JOINT APPENDIX**

# UNITED STATES COURT OF APPEALS
## FOR THE FEDERAL CIRCUIT

15-5036

FIDELITY & GUARANTY INSURANCE UNDERWRITERS, INC.;
UNITED STATES FIDELITY & GUARANTY CO.,

*Plaintiffs-Appellants,*

v.

UNITED STATES,

*Defendant-Appellee.*

Appeal from United States Court of Federal Claims in
Case No. 14-cv-84, Judge Elaine D. Kaplan

## JOINT APPENDIX

Lauren S. Moore
Commercial Litigation Branch
Civil Division
Department of Justice
Ben Franklin Station
P.O. Box 480
Washington, DC 20044
Tel: (202) 616-0333
Fax: (202) 514-8640

*Counsel for Appellee*

Richard L. McConnell
Brendan J. Morrissey
Wiley Rein LLP
1776 K Street, NW
Washington, DC 20006
Tel: (202) 719-7000
Fax: (202) 719-7049

*Counsel for Appellants*

# **TABLE OF CONTENTS**

**Page**

Final Judgment (Dkt. 28) (November 21, 2014) ...............................................JA01

Opinion and Order (Dkt. 27) (November 19, 2014).........................................JA02

Court of Federal Claims Docket Entries...........................................................JA10

First Amended Complaint (Dkt. 16) (May 9, 2014).........................................JA14

# In the United States Court of Federal Claims

**No. 14-84 C**

**FIDELITY AND GUARANTY
INSURANCE UNDERWRITERS,
ET AL.**

**JUDGMENT**

**v.**

**THE UNITED STATES**

Pursuant to the court's Opinion and Order, filed November 19, 2014, granting defendant's motion to dismiss for lack of subject matter jurisdiction,

IT IS ORDERED AND ADJUDGED this date, pursuant to Rule 58, that plaintiff's complaint is dismissed, without prejudice.

Hazel C. Keahey
Clerk of Court

**November 21, 2014**        By:    s/ Debra L. Samler

Deputy Clerk

NOTE: As to appeal, 60 days from this date, see RCFC 58.1, re number of copies and listing of all plaintiffs.  Filing fee is $505.00.

# In the United States Court of Federal Claims

No. 14-84C

(Filed: November 19, 2014)

|  |  |  |
|---|---|---|
| ――――――――――――――――― | ) |  |
| FIDELITY AND GUARANTY | ) |  |
| INSURANCE UNDERWRITERS, et al. | ) |  |
|  | ) | Tucker Act; 28 U.S.C. § 1491; Motion to |
| Plaintiffs, | ) | Dismiss for Lack of Subject Matter |
|  | ) | Jurisdiction; RCFC 12(b)(1); Waiver of |
| v. | ) | Sovereign Immunity; Privity of Contract; |
|  | ) | Equitable Subrogation; General Liability |
| THE UNITED STATES OF AMERICA, | ) | Insurer; Miller Act Surety. |
|  | ) |  |
| Defendant. | ) |  |
|  | ) |  |
| ――――――――――――――――― | ) |  |

*Richard L. McConnell*, Wiley Rein, LLP, Washington DC, for plaintiff. With him was *Brendan J. Morrissey*, Of Counsel.

*Lauren Springer Moore*, Commercial Litigation Branch, Civil Division, United States Department of Justice, Washington DC, for defendant. With her on the briefs were *Marian E. Sullivan*, Assistant Director; *Robert E. Kirschman, Jr.*, Director; and *Stuart F. Delery*, Assistant Attorney General.

## OPINION AND ORDER

**Kaplan, Judge.**

      The plaintiffs in this case are Fidelity and Guaranty Insurance Underwriters, Inc., and United States Fidelity and Guaranty Company (collectively "USF&G"). USF&G seeks reimbursement from the government for legal expenses and settlement costs it incurred in its capacity as general liability insurer for Gibbs Construction, L.L.C. f/k/a Gibbs Construction Co. ("Gibbs"), a government contractor. It alleges that as part of a 1984 contract to renovate a post office in New Orleans, Louisiana, the United States Postal Service ("USPS" or "Postal Service") agreed to indemnify Gibbs and its agents against any liability or expenses incurred as a result of asbestos removal work under the contract, but that USPS breached that agreement. USF&G maintains that it is "Gibbs's equitable subrogee in the amount of $1,560,583.34, and acceded to all claims Gibbs might have with respect to the underlying legal expenses and loss up to that amount." Am. Compl. ¶ 32, ECF No. 16 (May 9, 2014) (hereinafter "Compl.").

      The defendant, United States of America (hereinafter "the government"), has moved to dismiss USF&G's complaint for lack of subject matter jurisdiction under the Rules of the Court

of Federal Claims ("RCFC") 12(b)(1). For the reasons stated below, the government's motion to dismiss is **GRANTED**.

# BACKGROUND[1]

In 1984, USPS awarded Gibbs, a general contractor, a contract for the abatement of asbestos and fireproofing of the main Post Office in New Orleans, Louisiana. Compl. ¶¶ 5-6. Gibbs in turn contracted with Laughlin-Thyssen, Inc. f/k/a Laughlin Development Corporation ("LTI") for the asbestos removal portion of the project. Id. at ¶ 7.

On November 26, 1985, during the course of performance under the contract, Gibbs advised USPS that, due to unanticipated delays caused by USPS, it was having difficulty procuring general liability insurance that would cover asbestos removal at an affordable price for the remainder of the project. Compl. ¶¶ 10, 11. Therefore, Gibbs asked USPS to provide additional consideration to cover the procurement of additional insurance. Id. Instead, USPS agreed to execute an addendum to the contract. Compl. ¶ 13. The addendum, executed on March 12, 1987, stated as follows:

## ASBESTOS REMOVAL/REPAIR LIABILITY

The Postal Service shall save harmless and indemnify the contractors and its officers, agents, representatives, and employees from all claims, loss damage, actions, causes of action expense and/or liability resulting from brought for or no account of any personal injury received or sustained by any person persons attributable to the asbestos' removal work performed under or related to this contract.

Compl. ¶ 14 (typographical and grammatical errors in original). The addendum was signed by W. Bruce Powell, Jr., the USPS contracting officer with responsibility for the project. Compl. ¶ 15.

In the meantime, USF&G had issued three general liability insurance policies to Gibbs, which were in effect during three successive annual policy periods from January 1, 1985 through January 1, 1988. Compl. ¶ 17. Gibbs completed work on the contract to the satisfaction of USPS in June 1988. Compl. ¶ 19.

On March 25, 2010, a former USPS Police Officer filed suit against Gibbs and LTI, alleging that he contracted mesothelioma as a result of his occupational exposure to asbestos during the asbestos removal and fireproofing project between September 1984 and January 1988. Compl. ¶ 20. Gibbs demanded that USPS defend and indemnify Gibbs with respect to the

---

[1] For the purpose of resolving defendant's motion to dismiss, the Court assumes the allegations in plaintiffs' amended complaint are true. See Trusted Integration, Inc. v. United States, 659 F.3d 1159, 1163 (Fed. Cir. 2011) (In deciding a motion to dismiss for lack of subject matter jurisdiction, "a court must accept as true all undisputed facts asserted in the plaintiff's complaint.").

lawsuit, but USPS rejected that demand. Compl. ¶¶ 21, 22. According to USF&G, after USPS failed and refused to comply with its obligations under the addendum, Gibbs demanded that its insurers, including USF&G, defend and indemnify it in the lawsuit. Compl. ¶ 23. The lawsuit ultimately was settled, with Gibbs and its insurers together paying $1,375,000 to the USPS employee. Id. USF&G paid a total of $1,560,583.34 in legal expenses and settlement costs in the lawsuit. Compl. ¶¶ 23, 32.

After the settlement, Gibbs again tendered a demand to the USPS contracting officer on July 30, 2012, seeking indemnification for the amounts paid by Gibbs and its insurers in defending and settling the lawsuit. Compl. ¶ 24. The contracting officer denied Gibbs's claim on January 29, 2013. Compl. ¶ 25.

USF&G, as equitable subrogee to Gibbs, commenced this action against the government on January 29, 2014, with jurisdiction predicated upon the Tucker Act, 28 U.S.C. § 1491. Compl. ¶ 4. It contends that USPS's breach of the contract with Gibbs and refusal to defend and indemnify Gibbs against the USPS employee's claim forced Gibbs and its insurers to pay extensive legal expenses and settlement costs that they would not otherwise have had to pay, and that were the obligation of USPS under the contract. Compl. ¶¶ 27-32.

The government filed its motion to dismiss for lack of subject matter jurisdiction on May 28, 2014, arguing that this Court lacks subject matter jurisdiction over the present action because plaintiffs are not in privity of contract with the government. Def.'s Mot., ECF No. 19 (May 28, 2014). Oral argument was held on the motion on November 13, 2014.

## DISCUSSION

In deciding a motion to dismiss for lack of subject matter jurisdiction, the court accepts as true all undisputed facts in the pleadings and draws all reasonable inferences in favor of the plaintiff. Trusted Integration, 659 F.3d at 1163. The court may "inquire into jurisdictional facts" to determine whether it has jurisdiction. Rocovich v. United States, 933 F.2d 991, 993 (Fed. Cir. 1991). The plaintiff bears the burden of establishing subject matter jurisdiction by a preponderance of the evidence. Brandt v. United States, 710 F.3d 1369, 1373 (Fed. Cir. 2013).

The Court of Federal Claims has jurisdiction under the Tucker Act to hear "any claim against the United States founded either upon the Constitution, or any Act of Congress or any regulation of an executive department, or upon any express or implied contract with the United States, or for liquidated or unliquidated damages in cases not sounding in tort." 28 U.S.C. § 1491(a)(1) (2012). The Tucker Act waives the sovereign immunity of the United States to allow a suit for money damages, United States v. Mitchell, 463 U.S. 206, 212 (1983), but it does not confer any substantive rights. United States v. Testan, 424 U.S. 392, 398 (1976). Therefore, a plaintiff seeking to invoke the court's Tucker Act jurisdiction must identify an independent source of a substantive right to money damages from the United States arising out of a contract, statute, regulation, or constitutional provision. Jan's Helicopter Serv., Inc. v. Fed. Aviation Admin., 525 F.3d 1299, 1306 (Fed. Cir. 2008).

Although claims for damages arising out of a contract with the United States are squarely within the express terms of the Tucker Act, 28 U.S.C. § 1491(a), the "government consents to be

sued only by those with whom it has privity of contract." <u>Erickson Air Crane Co. v. United States</u>, 731 F.2d 810, 813 (Fed. Cir. 1984). Therefore, as a general matter, "[a] plaintiff must be in privity with the United States to have standing to sue the sovereign on a contract claim." <u>S. Cal. Sav. & Loan Ass'n v. United States</u>, 422 F.3d 1319, 1328 (Fed. Cir. 2005).

The Federal Circuit has recognized "limited exceptions" to the requirement that parties seeking relief for breach of contract against the government under the Tucker Act must be in privity of contract with the United States. <u>Id.</u> (citing <u>First Hartford Corp. Pension Plan & Trust v. United States</u>, 194 F.3d 1279, 1289 (Fed. Cir. 1999)). These limited exceptions include (1) actions against the United States by an intended third-party beneficiary; (2) pass-through suits by a subcontractor where the prime contractor is liable to the subcontractor for the subcontractor's damages; and (3) actions by a Miller Act surety for funds that the government improperly disbursed to a prime contractor. <u>First Hartford Corp. Pension Plan & Trust</u>, 194 F.3d at 1289. As the court of appeals has observed, "the common thread that unites these exceptions is that the party standing outside of privity by contractual obligation stands in the shoes of a party within privity." <u>Id.</u>; <u>see also</u> <u>S. Cal. Sav. & Loan Ass'n</u>, 422 F.3d at 1328.

In this case, USF&G is not in privity of contract with the government. It contends, however, that it falls within one of the limited exceptions to the privity requirement because it is asserting rights to sue that were assigned to it by operation of law as an equitable subrogee of a government contractor. Pl.'s Resp. 8-9, ECF No. 22 (July 3, 2014). USF&G thus analogizes its status to that of a Miller Act surety who has taken over contract performance or financed completion of a defaulted contract and whose standing to sue the United States under the Tucker Act, based on the doctrine of equitable subrogation, is well established. <u>See</u> <u>Lumbermens Mut. Cas. Co. v. United States</u>, 654 F.3d 1305, 1320-21 (Fed. Cir. 2011); <u>Ins. Co. of the West ("ICW") v. United States</u>, 243 F.3d 1367, 1375 (Fed. Cir. 2001); <u>Balboa Ins. Co. v. United States</u>, 775 F.2d 1158, 1161-63 (1985).

USF&G's contentions are unpersuasive. The doctrine of equitable subrogation is triggered in the case of a Miller Act surety "when the surety takes over contract performance or when it finances completion of the defaulted contract." <u>ICW</u>, 243 F.3d at 1370. As the court explained in <u>ICW</u>, "[a] surety bond creates a three-party relationship, in which the surety becomes liable for the principal's debt or duty to the third party obligee (here, the government)." 243 F.3d at 1370 (citing <u>Balboa</u>, 775 F.2d at 1160). "If the surety fails to perform, the Government can sue it on the bonds." <u>Id.</u> (quoting <u>Balboa</u>, 775 F.2d at 1160). Likewise, because the surety assumes the remaining obligations of performance, it may also assume the rights of the contractor to obtain payment from the government. <u>See</u> <u>Balboa</u>, 775 F.2d at 1160-61. "[T]he triggering of a surety's bond obligation gives rise to an implied assignment of rights by operation of law whereby the surety 'is subrogated to the [principal obligor's] property rights in the contract balance.'" <u>Lumbermens Mut. Cas. Co.</u>, 654 F.3d at 1312 (quoting <u>Balboa</u>, 775 F.2d at 1161). At that point, the surety "step[s] into the shoes of a Government contractor" and may "rely on the waiver of sovereign immunity in the Tucker Act, 28 U.S.C. § 1491, and bring suit against the United States." <u>ICW</u>, 243 F.3d at 1369.

While it is well established that a surety may bring suit against the United States under a theory of equitable subrogation, neither the Court of Federal Claims nor the Federal Circuit has

ever recognized a waiver of sovereign immunity under the Tucker Act in a case like the present one, in which a general liability insurer invokes the doctrine of equitable subrogation to step into its insured's shoes for purposes of suing the government for breach of contract. To the contrary, in the cases in which the issue has been raised, Tucker Act jurisdiction has been found lacking. See Travelers Cas. & Sur. Co. of Am. v. United States, 103 Fed. Cl. 101,104-05 (2012); Federal Ins. Co. v. United States, 29 Fed. Cl. 302, 304-08 (1993).

In that regard, the Court finds Judge Andewelt's reasoning in Federal Insurance persuasive. In that case, the plaintiff provided general liability insurance to a government contractor that had designed mailboxes for USPS. 29 Fed. Cl. at 303. After paying settlements and judgments to several government employees allegedly injured by the mailboxes in question, it brought an action against the United States under the Tucker Act as the contractual and equitable subrogee of the contractor. Id. at 302-303. Plaintiff claimed that it was required to make payments to the injured employees because USPS had breached its contractual obligations to, among other things, inspect and maintain the mailboxes so that they met operational and safety standards. Id. at 303. Relying upon Balboa and related cases, as well as United States v. Aetna Casualty & Surety Company, 338 U.S. 366 (1949), it asserted jurisdiction under the theory that the principle of equitable subrogation permitted it to step into the shoes of the contractor and pursue those claims that the contractor could have brought against USPS in its own name. Id. at 304.

Judge Andewelt rejected the plaintiff's argument, noting that Balboa and related cases "do not stand for the proposition that in enacting the Tucker Act, Congress intended the concept of equitable subrogation to be applied broadly to Tucker Act contract cases." Id. "To the contrary," the court observed, "the rationale for finding a waiver of sovereign immunity for government contract sureties in such cases appears narrow in scope and would not apply to a general liability insurer like plaintiff." Id. In particular, he explained, "[a] general liability insurer such as plaintiff is by no stretch of the imagination 'as much a party to the Government contract as the contractor.'" Id. at 305 (quoting Balboa, 775 F.2d at 1160). Further, he noted, "[a] general liability insurance contract does not result in a 'three-party agreement' analogous to a surety arrangement." Id. at 305. Instead, the insurance contract "creates rights and obligations that run exclusively between Bonus-Bilt, the contractor, and plaintiff, the insurer." Id. "The Postal Service is not a party to that insurance agreement[,] and the agreement does not create any obligations that run directly between the Postal Service and plaintiff." Id. Thus, "if [the contractor] failed to perform the contract work, the Postal Service could not look to plaintiff to complete the work, i.e., the insurance agreement does not render plaintiff 'liable for [the contractor's] debt or duty [to the Postal Service]." Id. In short, "[a] surety arrangement is a unique and distinct type of arrangement" because "[b]y agreeing through a performance bond to assume all of the contractor's burdens and obligations for contract performance, a surety, in a sense, is the alter ego of the contractor from the government's perspective." Id. In other words, "[a] surety not only steps into, but also completely fills, the shoes of the contractor." Id. By contrast, the court noted, the subrogation provision in the insurance contract in Federal Insurance "amounts to no more than a contingent assignment of a right to sue the government." Id. at 305-306. Thus, Judge Andewelt concluded,

In this context, plaintiff's analogy to surety cases must fail. The <u>Balboa</u> court's interpretation that the Tucker Act authorizes suit by a person who is "as much a party to the Government contract as the contractor" would hardly demand the conclusion that Congress also intended to authorize suit by parties who have no direct responsibility for contract performance and no other obligation owed directly to the government. Plaintiff's relationship to the government seems far better analogized to that of a subcontractor, which the <u>Balboa</u> court reasoned "has no obligation[ ] running directly to or from the Government . . . and therefore possesses no enforceable rights against the United States."

<u>Id.</u> at 306 (quoting <u>Balboa</u>, 775 F.2d at 1160).

USF&G's central contention in this case is that Judge Andewelt's analysis is no longer viable in light of language the Federal Circuit used in <u>ICW</u> when it reaffirmed the holding in <u>Balboa</u>. According to USF&G, <u>ICW</u> stands for the broad proposition that the Tucker Act's waiver of sovereign immunity extends to contract claims against the United States brought by any assignee that has acquired rights by operation of law. Pl.'s Resp. 8. This would include a general liability insurer, like USF&G, that has paid an insured contractor's claims pursuant to the insurance contract and who invokes the doctrine of equitable subrogation as a basis for bringing suit against the United States. The Court finds the plaintiffs' reliance upon <u>ICW</u> as creating a new exception to the requirement of privity of contract unpersuasive.

The specific issue presented in <u>ICW</u> was the same issue that had been presented in <u>Balboa</u>: whether a surety, "after stepping into the shoes of a government contractor, may rely on the waiver of sovereign immunity in the Tucker Act, 28 U.S.C. § 1491, and bring suit against the United States." <u>ICW</u>, 243 F.3d at 1369. As noted above, <u>Balboa</u> and other cases had previously established that "a surety could recover from the United States payments made to a contractor after the surety had notified the government of the contractor's default." <u>Id.</u> at 1369-70 (referring to <u>Balboa</u>, 775 F.2d at 1161-63). Nonetheless, in <u>ICW</u>, "the government argued that the Supreme Court's decision in <u>Department of the Army v. Blue Fox, Inc.</u>, 525 U.S. 255 (1999), had effectively overruled <u>Balboa</u> and these other cases." <u>Id.</u> at 1370. Specifically, the government relied on a passage in <u>Blue Fox</u> which stated that the three Supreme Court cases upon which <u>Balboa</u> had relied in finding sovereign immunity waived in the context of a surety's assertion of a right to equitable subrogation in fact involved disputes between private parties. <u>Id.</u> at 1371-72. The government "seize[d] upon [this] passage to argue that there is no waiver of sovereign immunity for sureties' equitable subrogation claims." <u>Id.</u> at 1371. The court of appeals rejected the government's argument. It reaffirmed the reasoning and holding in <u>Balboa</u>, concluding again that "a subrogee, after stepping into the shoes of a government contractor, may rely on the waiver of sovereign immunity in the Tucker Act and bring suit against the United States," and confirmed that <u>Balboa</u> "correctly states the law of equitable subrogation." <u>Id.</u> at 1375, 1375 n.5.

There is nothing about the holding in <u>ICW</u> that undermines the reasoning of <u>Federal Insurance</u> or requires an expansion of the limited categories of claims for which privity of contract is not required. In fact, the opinion in <u>ICW</u> discusses the reasoning of <u>Balboa</u> at length and, as noted, closes with an explicit endorsement of <u>Balboa</u>'s statement of the law of equitable

subrogation. USF&G nonetheless seizes upon certain general observations that the court of appeals made in <u>ICW</u> with respect to how to apply the Supreme Court's ruling in <u>Aetna Casualty & Surety Company</u>, a case arising under the Federal Tort Claims Act, to cases under the Tucker Act. It urges that these statements undermine the fundamental distinctions that the court in <u>Federal Insurance</u> drew between suits by sureties and those by liability insurers. Pl.'s Resp. 10-11. In particular, USF&G argues, <u>ICW</u> made the point that, like the Federal Tort Claims Act, the Tucker Act must be interpreted to "waive[] immunity as to <u>claims</u>, not claimants." Pl.'s Resp. 8 (citing <u>ICW</u>, 243 F.3d at 1373). The Federal Circuit thus recognized, USF&G argues, that "[n]either the Federal Tort Claims Act nor the Tucker Act is limited to claims asserted by the original claimant." <u>ICW</u>, 243 F.3d at 1373.

USF&G's contention that this language supports its standing to sue here is unpersuasive. Besides the fact that this language (and indeed much of the discussion of <u>Aetna Casualty & Surety Company</u> in <u>ICW</u>) appears to be dicta (see discussion below), the reason USF&G lacks standing in this case is not simply because it is not the "original claimant" (<u>i.e.</u> not in privity with the government). Rather, it lacks standing because, unlike a surety, it has not stepped completely into the shoes of the contractor. Here, unlike the plaintiff in <u>ICW</u> or the plaintiffs in <u>Balboa</u> and related cases, USF&G did not owe any contractual obligations to the United States or vice versa. Its contractual obligations were to its insured, Gibbs. Therefore, USF&G did not step into the shoes of the contractor (or "original claimant") in the same sense that the court of appeals concluded that the sureties had done in <u>Balboa</u>, <u>ICW</u>, and related cases.

In contending that <u>ICW</u> pronounced a broad rule recognizing a waiver of sovereign immunity for equitable subrogees even if they do not fully step into the shoes of the contractor, USF&G relies upon language in <u>ICW</u> which expansively characterized the Court's ruling in <u>Aetna</u> and its application to the Tucker Act. <u>See</u> Pl.'s Resp. 8 ("<u>Aetna</u> reflects a broader and more generally applicable legal principle: waivers of sovereign immunity applicable to the original claimant are to be construed as extending to those who receive assignments, whether voluntary assignments or assignments by operation of law, where the statutory waiver of sovereign immunity is not expressly limited to waivers for claims asserted by the original claimant" (quoting <u>ICW</u>, 243 F.3d at 1373)). The Court agrees with the other judges of the Court of Federal Claims who have described this expansive language as dicta unnecessary to the otherwise narrow holding in <u>ICW</u>. <u>Travelers Cas. & Sur. Co.</u>, 103 Fed. Cl. at 104; <u>Nelson Constr. Co. v. United States</u>, 79 Fed. Cl. 81, 88 (2007); <u>Centers v. United States</u>, 71 Fed. Cl. 529, 533 (2006); <u>Commercial Cas. Ins. Co. of Ga. v. United States</u>, 71 Fed. Cl. 104, 108 (2006).

Indeed, it is worth noting that each of the court of appeals' decisions that have since discussed <u>ICW</u> in any detail has characterized the holding in that case as merely reaffirming the longstanding doctrine of equitable subrogation set forth in <u>Balboa</u>, and has explained that the basis for that holding was the fact that—upon notifying the government of the contractor's default—sureties fully step into the shoes of the defaulting contractors for purposes of contractual obligations running both to and from the government. <u>See, e.g.</u>, <u>Lumbermens</u>, 654 F.3d at 1312-13; <u>Nat'l Am. Ins. Co. v. United States</u>, 498 F.3d 1301, 1307 (Fed. Cir. 2007); <u>Fireman's Fund Ins. Co. v. United States</u>, 313 F.3d 1344, 1351-52 (Fed. Cir. 2002). None has suggested that <u>ICW</u> stands for the broader proposition urged here, creating an exception to the privity requirement for all equitable subrogees, even those like USF&G that have not assumed

any obligations under a contract with the United States. This Court, therefore, declines to give a broad reading to <u>ICW</u> that would create an additional exception to the well-established requirement of privity of contract as a basis for standing to sue under the Tucker Act.

## CONCLUSION

On the basis of the foregoing, the government's motion to dismiss for lack of subject matter jurisdiction is **GRANTED** and the complaint is dismissed without prejudice. The Clerk of the Court is directed to enter judgment accordingly.

**IT IS SO ORDERED.**

s/ Elaine D. Kaplan
ELAINE D. KAPLAN
Judge

APPEAL,CLOSED,ECF

# US Court of Federal Claims
## United States Court of Federal Claims (COFC)
### CIVIL DOCKET FOR CASE #: 1:14-cv-00084-EDK

FIDELITY AND GUARANTY INSURANCE
UNDERWRITERS, INC. et al v. USA
Assigned to: Judge Elaine D. Kaplan
Case in other court: 15-05036
Cause: 28:1491 Tucker Act

Date Filed: 01/29/2014
Date Terminated: 11/21/2014
Jury Demand: None
Nature of Suit: 134 Contract - Other
Jurisdiction: U.S. Government Defendant

## Plaintiff

**FIDELITY AND GUARANTY
INSURANCE UNDERWRITERS,
INC.**
*and*

represented by **James H. Wallace , Jr.**
Wiley Rein, LLP (DC)
1776 K Street, NW
Washington, DC 20006
(202) 719-7000
Fax: (202) 719-7049
Email: jwallace@wileyrein.com
*TERMINATED: 03/26/2014*
*LEAD ATTORNEY*

**Richard L. McConnell**
Wiley Rein, LLP
1776 K Street, NW
Washington, DC 20006
(202) 719-7265
Fax: (202) 719-7049
Email: rmcconnell@wileyrein.com
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

## Plaintiff

**UNITED STATES FIDELITY AND
GUARANTY COMPANY**

represented by **James H. Wallace , Jr.**
(See above for address)
*TERMINATED: 03/26/2014*
*LEAD ATTORNEY*

**Richard L. McConnell**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

V.

## Defendant

JA10

**USA**

represented by **Lauren Springer Moore**
U. S. Department of Justice - Civil Div.
Post Office Box 480
Ben Franklin Station
Washington, DC 20044
(202) 616-0333
Fax: (202) 514-8640
Email: lauren.moore@usdoj.gov
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

| Date Filed | # | Docket Text |
|---|---|---|
| 01/29/2014 | 1 | COMPLAINT against USA (PS) (Filing fee $400, Receipt number 076188) (Copy Served Electronically on Department of Justice), filed by All Plaintiffs. **Answer due by 3/31/2014.** (Attachments: # 1 Civil Cover Sheet)(dw1) (Entered: 01/30/2014) |
| 01/29/2014 | 2 | Rule 7.1 Disclosure Statement, filed by All Plaintiffs. Service: 1/29/2014.(dw1) (Entered: 01/30/2014) |
| 01/29/2014 | 3 | RCFC Rule 20(a), filed by All Plaintiffs re 1 Complaint. Service: 1/29/2014.(dw1) (Entered: 01/30/2014) |
| 01/29/2014 | 4 | NOTICE of Assignment to Judge Elaine D. Kaplan. (dw1) (Entered: 01/30/2014) |
| 01/29/2014 | 5 | NOTICE of Designation of Electronic Case. (dw1) (Entered: 01/30/2014) |
| 02/24/2014 | 6 | NOTICE of Appearance by Lauren Springer Moore for USA . (Moore, Lauren) (Entered: 02/24/2014) |
| 03/25/2014 | 7 | First MOTION for Extension of Time until 04/30/14 to , filed by USA.**Response due by 4/11/2014.**(Moore, Lauren) (Entered: 03/25/2014) |
| 03/26/2014 | 8 | NOTICE of Appearance by Richard L. McConnell for FIDELITY AND GUARANTY INSURANCE UNDERWRITERS, INC., UNITED STATES FIDELITY AND GUARANTY COMPANY . (McConnell, Richard) (Entered: 03/26/2014) |
| 03/26/2014 | 9 | Consented MOTION to Substitute Attorney Richard L. McConnell in place of James H. Wallace, Jr. , filed by All Plaintiffs.(McConnell, Richard) (Entered: 03/26/2014) |
| 03/26/2014 | 10 | ORDER granting 7 Motion for Extension of Time. **Answer due by 4/30/2014.** Signed by Judge Elaine D. Kaplan. (cr) Copy to parties. (Entered: 03/26/2014) |
| 03/26/2014 | 11 | ORDER NOTICE granting re: 9 Motion to Substitute Attorney (Consented) pursuant to Rule 83.1(c)(4). Added attorney Richard L. McConnell for FIDELITY AND GUARANTY INSURANCE UNDERWRITERS, INC.,Richard L. McConnell for UNITED STATES FIDELITY AND GUARANTY COMPANY. Attorney James H. Wallace, Jr terminated. Entered by the Clerk. Signed by Judge Elaine D. Kaplan. (cr) Copy to parties. (Entered: 03/26/2014) |
| 04/17/2014 | 12 | MOTION to Amend Pleadings - Rule 15 1 Complaint, , filed by All |

JA11

| | | |
|---|---|---|
| | | Plaintiffs.**Response due by 5/5/2014.** (Attachments: # 1 Exhibit Amended Complaint)(McConnell, Richard) (Entered: 04/17/2014) |
| 04/29/2014 | 13 | ORDER granting 12 Motion to Amend Pleadings - Rule 15(b). Signed by Judge Elaine D. Kaplan. (cr) Copy to parties. (Entered: 04/29/2014) |
| 05/01/2014 | 14 | Second MOTION for Extension of Time until 05/27/2014 to respond to amended complaint , filed by USA.**Response due by 5/19/2014.**(Moore, Lauren) (Entered: 05/01/2014) |
| 05/01/2014 | 15 | ORDER granting 14 Motion for Extension of Time to Answer Complaint. **Answer due by 5/27/2014.** Signed by Judge Elaine D. Kaplan. (cr) Copy to parties. (Entered: 05/01/2014) |
| 05/09/2014 | 16 | AMENDED COMPLAINT against USA, filed by FIDELITY AND GUARANTY INSURANCE UNDERWRITERS, INC., UNITED STATES FIDELITY AND GUARANTY COMPANY. **Answer due by 5/27/2014.** Related document: 1 Complaint, filed by FIDELITY AND GUARANTY INSURANCE UNDERWRITERS, INC., UNITED STATES FIDELITY AND GUARANTY COMPANY.(dls) (Entered: 05/09/2014) |
| 05/27/2014 | 17 | Third MOTION for Extension of Time until 05/28/2014 to File Response , filed by USA.**Response due by 6/13/2014.**(Moore, Lauren) (Entered: 05/27/2014) |
| 05/27/2014 | 18 | ORDER granting 17 Motion for Extension of Time to File Response to Plaintiffs' Amended Complaint. **Response due by 5/28/2014.** Signed by Judge Elaine D. Kaplan. (cr) Copy to parties. (Entered: 05/27/2014) |
| 05/28/2014 | 19 | MOTION to Dismiss pursuant to Rule 12(b)(1) , filed by USA.**Response due by 6/30/2014.**(Moore, Lauren) (Entered: 05/28/2014) |
| 06/23/2014 | 20 | Unopposed MOTION for Extension of Time until July 3, 2014 to File Response to Motion to Dismiss , filed by All Plaintiffs.**Response due by 7/10/2014.** (McConnell, Richard) (Entered: 06/23/2014) |
| 06/24/2014 | 21 | ORDER granting 20 Plaintiff's Motion for Extension of Time to Respond to Defendant's Motion to Dismiss. **Response due by 7/3/2014.** Signed by Judge Elaine D. Kaplan. (cr) Copy to parties. (Entered: 06/24/2014) |
| 07/03/2014 | 22 | RESPONSE to 19 MOTION to Dismiss pursuant to Rule 12(b)(1) , filed by All Plaintiffs.**Reply due by 7/14/2014.** (McConnell, Richard) (Entered: 07/03/2014) |
| 07/10/2014 | 23 | First MOTION for Extension of Time until 07/21/2014 to File Reply , filed by USA.**Response due by 7/28/2014.**(Moore, Lauren) (Entered: 07/10/2014) |
| 07/10/2014 | 24 | ORDER granting 23 Defendant's Motion for Extension of Time to File Reply to Plaintiffs Opposition to Defendants Motion to Dismiss. **Reply due by 7/21/2014.** Signed by Judge Elaine D. Kaplan. (cr) Copy to parties. (Entered: 07/10/2014) |
| 07/21/2014 | 25 | REPLY to Response to Motion re 19 MOTION to Dismiss pursuant to Rule 12(b) (1) , filed by USA. (Moore, Lauren) (Entered: 07/21/2014) |
| 10/30/2014 | 26 | ORDER Setting Hearing on 19 MOTION to Dismiss pursuant to Rule 12(b)(1) : **Oral Argument set for 11/13/2014 at 10:00 AM in Courtroom before Judge Elaine D. Kaplan.** Signed by Judge Elaine D. Kaplan. (cr) Copy to parties. (Entered: 10/30/2014) |

JA12

| 11/13/2014 | | Minute Entry - Was the proceeding sealed to the public? No. Proceeding held in Washington, DC on 11/13/2014., ended on 11/13/2014, before Judge Elaine D. Kaplan: Oral Argument. [Total number of days of proceeding: 1]. Official record of proceeding taken by court reporter. To order a certified transcript or an audio copy of the proceeding (click HERE)(cr) (Entered: 11/13/2014) |
|---|---|---|
| 11/19/2014 | 27 | REPORTED OPINION granting 19 Motion to Dismiss - Rule 12(b)(1). The Clerk is directed to enter judgment. Signed by Judge Elaine D. Kaplan. (cr) Copy to parties. (Entered: 11/19/2014) |
| 11/21/2014 | 28 | JUDGMENT entered, pursuant to Rule 58, dismissing plaintiff's complaint without prejudice. (Copy to parties) (dls) (Entered: 11/21/2014) |
| 12/01/2014 | 29 | Notice Of Filing Of Certified Transcript for proceedings held on November 13, 2014 in Washington, D.C. (ew) (Entered: 12/01/2014) |
| 12/01/2014 | 30 | TRANSCRIPT of Proceedings held on November 13, 2014 before Judge Elaine D. Kaplan. Total No. of Pages: 1-40. Procedures Re: Electronic Transcripts and Redactions. To purchase a copy, contact the clerk's office at (202) 357-6414. Notice of Intent to Redact due 12/8/2014. Redacted Transcript Deadline set for 1/2/2015. Release of Transcript Restriction set for 3/2/2015. (ew) (Entered: 12/01/2014) |
| 12/10/2014 | 31 | NOTICE OF APPEAL as to 28 Judgment, 27 Order on Motion to Dismiss - Rule 12(b)(1), Reported Opinion, filed by All Plaintiffs. **$505.00 filing fee is due.** Copies to judge, opposing party and CAFC. (McConnell, Richard) (Entered: 12/10/2014) |
| 12/10/2014 | | Transmission of Notice of Appeal and Docket Sheet to US Court of Appeals for the Federal Circuit re 31 Notice of Appeal, (hw1) (Entered: 12/10/2014) |
| 12/11/2014 | | CAFC Appeal Fees received $505, receipt number CFC100000061 re 31 Notice of Appeal, filed by FIDELITY AND GUARANTY INSURANCE UNDERWRITERS, INC., UNITED STATES FIDELITY AND GUARANTY COMPANY. (hw1) (Entered: 12/15/2014) |
| 12/17/2014 | | CAFC Case Number 2015-5036 for 31 Notice of Appeal, filed by FIDELITY AND GUARANTY INSURANCE UNDERWRITERS, INC., and UNITED STATES FIDELITY AND GUARANTY COMPANY. (hw1) (Entered: 12/17/2014) |

| PACER Service Center | | |
|---|---|---|
| **Transaction Receipt** | | |
| 12/19/2014 16:26:37 | | |
| **PACER Login:** | wr0657 | **Client Code:** | 70011-0312 |
| **Description:** | Docket Report | **Search Criteria:** | 1:14-cv-00084-EDK |
| **Billable Pages:** | 3 | **Cost:** | 0.30 |

JA13

IN THE UNITED STATES COURT OF FEDERAL CLAIMS

FIDELITY AND GUARANTY INSURANCE
UNDERWRITERS, INC., and UNITED
STATES FIDELITY AND GUARANTY
COMPANY,

                      Plaintiffs,             No. 14-cv-84 (EDK)

v.

THE UNITED STATES OF AMERICA,

                      Defendant.

## AMENDED COMPLAINT

COME NOW Plaintiffs, Fidelity and Guaranty Insurance Underwriters, Inc. and United States Fidelity and Guaranty Company (collectively, "USF&G"), as equitable subrogees of Gibbs Construction, L.L.C., by and through their undersigned counsel, and by way of Amended Complaint against the Defendant, The United States of America, state as follows:

### Jurisdiction and Parties

1.    Plaintiff Fidelity and Guaranty Insurance Underwriters, Inc. is an insurance company organized and existing under the laws of the State of Wisconsin.

2.    Plaintiff United States Fidelity and Guaranty Company is an insurance company organized and existing under the laws of the State of Connecticut.

3.    Defendant United States of America ("United States" or "Defendant") is the federal government, acting by and through the United States Postal Service ("USPS").

4.    Jurisdiction is conferred on this Court by the Tucker Act, 28 U.S.C. § 1491, *et seq.* Gibbs Construction, L.L.C. f/k/a Gibbs Construction Co. ("Gibbs") was a party to an express or

1

implied contract with USPS, and USF&G has a remedy as equitable subrogee of Gibbs against Defendant.

**Facts**

5.      In approximately 1984, USPS put out for public bidding a contract for the abatement and fireproofing of the main Post Office in New Orleans, Louisiana, under Bid No. 479952-84-A-0027.

6.      Gibbs, a general contractor with its principal place of business in Harahan, Louisiana, was selected as the general contractor under contract number 479952-84-V-0164.

7.      Gibbs in turn contracted with Laughlin-Thyssen, Inc. f/k/a Laughlin Development Corporation ("LTI") for the asbestos removal portion of the project.

8.      The contract initially called for work to be completed by November 15, 1985. However, unforeseen delays, caused in part by change orders issued by USPS and other extra-contractual work, caused the project to be delayed through no fault of Gibbs or LTI.

9.      The cumulative effect of the foregoing delays was to increase the risk placed upon Gibbs, which was not contemplated by the original contract, and for which Gibbs did not receive compensation.

10.     LTI initially procured general liability insurance to cover the asbestos removal. However, when it attempted to renew that insurance in September 1985, LTI's insurer would not renew the policy. Policies covering asbestos liabilities, although available in the market, could be obtained only for significantly higher premiums due to mounting asbestos losses industrywide. As a result, the cost to Gibbs and LTI of performing the contract work was increased significantly.

11.     Gibbs communicated this issue to USPS on November 26, 1985, and requested additional compensation from USPS to cover the increased cost of completing the project.

2

12.     In a meeting on December 4, 1985, Philip Ferrari, the USPS Contracting Officer at the time, acknowledged that the inability to obtain insurance was a problem arising in part due to unforeseen delays in project completion.

13.     USPS ultimately resolved the matter by issuing an indemnification and hold harmless Letter to Gibbs on March 12, 1987, as an agreed-upon addendum to contract number 479952-84-V-0164.  The addendum containing the indemnification provision was consideration for Gibbs completing additional work and taking on additional, unforeseen risks at an additional cost to Gibbs.

14.     The indemnification provision stated:

                    ASBESTOS REMOVAL/REPAIR LIABILITY

>       The Postal Service shall save harmless and indemnify the
>       contractors and its officers, agents, representatives, and employees
>       from all claims, loss[,] damage, actions, causes of action[,] expense
>       and/or liability resulting from[,] brought for or no [sic] account of
>       any personal injury received or sustained by any person persons
>       [sic] attributable to the asbestos' [sic] removal work performed
>       under or related to this contract.

15.     The addendum containing the indemnification provision was signed by W. Bruce Powell, Jr., the USPS Contracting Officer with responsibility for the project, who had actual and apparent authority to agree to the contract modification.

16.     Mr. Powell had contracting authority up to $12 million for construction contracts.  The addendum containing the indemnification provision was reviewed by the USPS legal department and the USPS's Washington headquarters before it was signed and delivered to Gibbs.

17.     USF&G issued the following insurance policies to Gibbs:

>       Policy No. MP 022754810
>       Effective January 1, 1985 to January 1, 1986
>
>       Policy No. MP 046493359
>       Effective January 1, 1986 to January 1, 1987

3

Policy No. MP 091683526
Effective January 1, 1987 to January 1, 1988

18.     On information and belief, Nationwide Mutual Insurance Company also issued one or more policies of insurance to Gibbs during the relevant time period.

19.     Gibbs completed work on the contract, to the satisfaction of USPS, in June 1988.

20.     On March 25, 2010, Louis Wilson, a former Postal Police Officer, filed suit against Gibbs and LTI, alleging that he contracted mesothelioma as a result of his occupational exposure to asbestos during the asbestos removal and fireproofing project.  Mr. Wilson alleged that he was exposed to asbestos between September 1984 and January 1988.

21.     Pursuant to the March 12, 1987 indemnity agreement, Gibbs tendered its demand for defense and indemnity upon the USPS on May 27, 2010.

22.     The USPS breached its contract with Gibbs by rejecting Gibbs's demand for defense and indemnity under the agreement.

23.     Gibbs and its insurers defended the lawsuit brought by Mr. Wilson and ultimately settled the lawsuit with Mr. Wilson in August 2011.  Gibbs and its insurers paid at least $529,333.34 in legal expenses to defend the suit, and paid $1,375,000 to Mr. Wilson in settlement.  USF&G, which paid the majority of these amounts, paid $529,333.34 in legal expenses and $1,031,250.00 in settlement of the lawsuit brought by Mr. Wilson.

24.     Gibbs tendered a demand to the USPS Contracting Officer on July 30, 2012, seeking reimbursement and indemnification for the $1,825,258.57 paid by Gibbs and its insurers in defending and settling the Wilson lawsuit.

4

25.    USPS Contracting Officer Kevin M. Gaughan denied Gibbs's claim on January 29, 2013. USPS breached its contract with Gibbs by rejecting Gibbs's demand and refusing to hold harmless and indemnify Gibbs.

### Claim for Relief – Equitable Subrogation

26.    USF&G reasserts and realleges the allegations contained in Paragraphs 1-25 as though fully set forth herein.

27.    Gibbs suffered a loss when it became obligated to pay $1,825,258.57 in legal expenses and settlement costs that it should not have had to incur if USPS had not breached its obligations to Gibbs under the contract.

28.    USF&G's payments of $529,333.34 in legal expenses and $1,031,250.00 in settlement costs were made pursuant to legal obligation under one or more of the insurance policies issued by USF&G to Gibbs.

29.    USPS is obligated to hold harmless and indemnify Gibbs against the lawsuit brought by Mr. Wilson against Gibbs and the related legal expenses and settlement costs, and was so obligated at the time USF&G paid Gibbs's claim.

30.    The USPS breached contract number 479952-84-V-0164 by rejecting Gibbs's demand for defense and indemnity, and refusing to hold harmless and indemnify Gibbs.

31.    The United States's unjustified refusal to pay Gibbs's legal expenses and settlement costs in the Wilson lawsuit resulted in USF&G being required to pay the majority of those amounts. As a result, USF&G has paid $1,560,583.34 that it should not have had to pay.

32.    USF&G is Gibbs's equitable subrogee in the amount of $1,560,583.34, and acceded to all claims Gibbs might have with respect to the underlying legal expenses and loss up to that amount.

5

33.     It would be inequitable for the United States to retain the $1,825,258.57 that it should have paid under its contract with Gibbs.  USF&G is therefore entitled to recover $1,560,583.34 from the United States.

WHEREFORE, Plaintiffs Fidelity and Guaranty Insurance Underwriters, Inc. and United States Fidelity and Guaranty Company respectfully request that this Honorable Court grant judgment in their favor, declaring that the United States of America acting through the USPS wrongfully breached its contractual obligations, declaring the United States liable for the losses suffered due to said breaches, and, awarding Plaintiffs a judgment in the amount of $1,560,583.34 plus pre-judgment and post-judgment interest, any and all attorney's fees, legal fees and costs associated with this action as provided by law, and for such other and further relief as is just and proper.

Dated:  April 17, 2014                    s/ Richard L. McConnell
                                          _____
                                          Richard L. McConnell (Attorney of Record)
                                          Brendan J. Morrissey (Of Counsel)
                                          WILEY REIN LLP
                                          1776 K Street, NW
                                          Washington, DC  20006
                                          Tel.: (202) 719-7000
                                          Fax: (202) 719-7049
                                          rmcconnell@wileyrein.com

6

Form 30

**FORM 30. Certificate of Service**

# UNITED STATES COURT OF APPEALS
# FOR THE FEDERAL CIRCUIT

# CERTIFICATE OF SERVICE

I certify that I served a copy on counsel of record on  Feb 17, 2015
by:

- ☐ US mail
- ☐ Fax
- ☐ Hand
- ☒ Electronic Means
  (by email or CM/ECF)

Richard L. McConnell                        /s/ Richard L. McConnell

Name of Counsel                             Signature of Counsel

Law Firm  Wiley Rein LLP

Address  1776 K Street, NW

City, State, ZIP  Washington, DC 20006

Telephone Number  202.719.7000

FAX Number  202.719.7049

E-mail Address  rmcconnell@wileyrein.com

NOTE: For attorneys filing documents electronically, the name of the filer
under whose log-in and password a document is submitted must be preceded
by an "/s/" and typed in the space where the signature would otherwise appear.
Graphic and other electronic signatures are discouraged.

Form 19

FORM 19.   Certificate of Compliance With Rule 32(a)

**CERTIFICATE OF COMPLIANCE WITH TYPE-VOLUME LIMITATION, TYPEFACE REQUIREMENTS, AND TYPE STYLE REQUIREMENTS**

1.    This brief complies with the type-volume limitation of Federal Rule of Appellate Procedure 32(a)(7)(B) or Federal Rule of Appellate Procedure 28.1(e).

☑    The brief contains [       9241       ] words, excluding the parts of the brief exempted by Federal Rule of Appellate Procedure 32(a)(7)(B)(iii), or

☐    The brief uses a monospaced typeface and contains [ *state the number of* ] lines of text, excluding the parts of the brief exempted by Federal Rule of Appellate Procedure 32(a)(7)(B)(iii).

2.    This brief complies with the typeface requirements of Federal Rule of Appellate Procedure 32(a)(5) or Federal Rule of Appellate Procedure 28.1(e) and the type style requirements of Federal Rule of Appellate Procedure 32(a)(6).

☑    The brief has been prepared in a proportionally spaced typeface using
[                    *Microsoft Word 2010*                    ] in
[                *14-point Times New Roman*                ], or

☐    The brief has been prepared in a monospaced typeface using
[        *state name and version of word processing program*        ] with [
[        *state number of characters per inch and name of type style*        ].

/s/ Richard L. McConnell
_____
(Signature of Attorney)
Richard L. McConnell
_____
(Name of Attorney)
Counsel for Appellants
_____
(State whether representing appellant, appellee, etc.)
2/17/2015
_____
(Date)

Reset Fields