# United States Court of Appeals for the Federal Circuit

---

**FIDELITY AND GUARANTY INSURANCE UNDERWRITERS, INC., UNITED STATES FIDELITY AND GUARANTY COMPANY,**
*Appellants*

v.

**UNITED STATES,**
*Appellee*

---

2015-5036

---

Appeal from the United States Court of Federal Claims in No. 14-00084, Judge Elaine Kaplan.

---

Decided: November 6, 2015

---

RICHARD L. MCCONNELL, JR., Wiley Rein, LLP, Washington, DC, argued for appellants. Also represented by BRENDAN J. MORRISSEY, Bentonville, AR.

LAUREN MOORE, Commercial Litigation Branch, Civil Division, United States Department of Justice, Washington, DC, argued for appellee. Also represented by BENJAMIN C. MIZER, ROBERT E. KIRSCHMAN, JR., DEBORAH A. BYNUM.

---

Before LOURIE, SCHALL, and LINN, *Circuit Judges*.

SCHALL, *Circuit Judge*.

Fidelity and Guaranty Insurance Underwriters, Inc. and United States Fidelity and Guaranty Co. (collectively "USF&G") appeal the decision of the United States Court of Federal Claims granting the government's motion to dismiss their amended complaint for lack of subject matter jurisdiction. *Fid. & Guar. Ins. Underwriters v. United States*, 119 Fed. Cl. 195 (2014). USF&G filed suit in the Court of Federal Claims under the Tucker Act, 28 U.S.C. § 1491(a)(1), seeking reimbursement from the government for legal expenses and settlement costs it allegedly incurred in its capacity as general liability insurer for Gibbs Construction, L.L.C. f/k/a Gibbs Construction Co. ("Gibbs"), a government contractor. USF&G alleged that, in a contract for renovation work at the main post office in New Orleans, Louisiana, the United States Postal Service ("Postal Service") agreed to indemnify Gibbs and its agents against any liability incurred as a result of asbestos removal work under the contract. USF&G alleged that the Postal Service breached that agreement when it failed to indemnify Gibbs in connection with a lawsuit filed against Gibbs by a former Postal Service police officer, in which the officer claimed that he contracted mesothelioma as a result of asbestos removal during performance of the contract. USF&G further alleged that, as Gibbs's general liability insurer, it had been required to litigate and settle the officer's claim after the government failed to indemnify Gibbs. USF&G asserted that the Court of Federal Claims had jurisdiction because USF&G was Gibbs's equitable subrogee. In granting the government's motion to dismiss, the court disagreed, holding that it lacked jurisdiction under a theory of equitable subrogation. We affirm.

BACKGROUND

In deciding the government's motion to dismiss, the Court of Federal Claims was required to "accept as true all undisputed facts asserted in [USF&G's amended] complaint and draw all reasonable inferences in favor of [USF&G]." *Trusted Integration, Inc. v. United States*, 659 F.3d 1159, 1163 (Fed. Cir. 2011). For purposes of its motion to dismiss, the government did not dispute the facts asserted by USF&G in the amended complaint. Thus, the amended complaint sets forth the uncontested factual backdrop for this appeal. We recite here the facts pertinent to the issue before us.

I.

In 1984, the Postal Service and Gibbs entered into a contract for the abatement of asbestos and for fireproofing at the main post office in New Orleans, Louisiana. Am. Compl. ¶ 5. As general contractor, Gibbs subcontracted the asbestos removal portion of the project to Laughlin-Thyssen, Inc. f/k/a Laughlin Development Co. ("LTI"). *Id.* ¶ 6. LTI purchased general liability insurance for the asbestos removal work under its subcontract with Gibbs. *Id.* ¶ 10.

In 1985, during the course of performance of the contract, and after delays caused by the Postal Service, LTI attempted to renew its general liability insurance, but the insurer would not renew the policy. *Id.* Because the cost of liability insurance had significantly increased, Gibbs contacted the Postal Service and requested additional compensation to cover the increased cost of completing the project. *Id.* ¶ 10–11. Eventually, instead of providing additional monetary compensation, the Postal Service proposed that the contract be amended to indemnify Gibbs for liability incurred as a result of any asbestos-related injury. *Id.* ¶ 12–14. The indemnification provision, which was set forth in a letter from the Postal Service to Gibbs, stated:

### ASBESTOS REMOVAL/REPAIR LIABILITY

> The Postal Service shall save harmless and indemnify the contractors and its officers, agents, representatives, and employees from all claims, loss damage, actions, causes of action expense and/or liability resulting from brought for or no account of any personal injury received or sustained by any person persons attributable to the asbestos' removal work performed under or related to this contract.

*Id.* ¶ 14 (typographical and grammatical errors in original).[1] Gibbs accepted the Postal Service's proposal by continuing work pursuant to the contract and finishing the project in June 1988. *Id.* ¶ 19. In the meantime, USF&G issued three general liability policies to Gibbs. The policies covered three consecutive, annual time periods, ranging from January 1, 1985, to January 1, 1988. *Id.* ¶ 17.

## II.

In March 2010, Louis Wilson, a former Postal Service police officer, sued Gibbs and LTI, alleging that, between September 1984 and January 1988, he contracted mesothelioma as a result of asbestos removal work performed under the contract. *Id.* ¶ 20. On May 27, 2010, Gibbs demanded that the Postal Service defend against the suit

---

[1] During oral argument, the parties agreed that the text of the indemnification provision recited in the letter should be corrected to read as follows: "The Postal Service shall save harmless and indemnify the contractors . . . from all claims . . . resulting from[,] brought for[,] or [on] account of any personal injury received . . . by any person [or] persons attributable to the asbestos[] removal work performed under or related to this contract." Oral Arg. at 0:50–1:50, 15:20–16:10.

and indemnify it, pursuant to the amendment to the contract. *Id.* ¶ 21. The Postal Service refused to do so, however. *Id.* ¶ 22. In due course, Gibbs and its insurers, including USF&G, settled with Mr. Wilson without the Postal Service's involvement. *Id.* ¶ 23. USF&G paid $1,031,250.00 to settle Mr. Wilson's claims and incurred an additional $529,333.34 in legal expenses. *Id.*

Gibbs thereafter sought reimbursement from the Postal Service for the settlement costs and legal expenses incurred by its insurers. *Id.* ¶ 24. On January 29, 2013, the contracting officer denied the claim. *Id.* ¶ 25. A year later, on January 29, 2014, USF&G filed a complaint against the government in the Court of Federal Claims, seeking to recover the settlement costs and legal expenses it had incurred in the lawsuit brought by Mr. Wilson. *See* Joint Appendix ("J.A.") 11. Claiming jurisdiction under the Tucker Act, USF&G alleged a breach of contract. Am. Compl. ¶ 4.

### III.

In due course, the government filed a motion to dismiss USF&G's amended complaint pursuant to Rule 12(b)(1) of the Court of Federal Claims. Mot. to Dismiss Am. Compl., *Fid. & Guar. Ins. Underwriters, Inc. v. United States*, No. 1:14-cv-00084-EDK (Fed. Cl. May 28, 2014), ECF No. 19. In its motion, the government contended that the Court of Federal Claims lacked jurisdiction to entertain USF&G's claim under the Tucker Act because of the absence of a contract between USF&G and the United States. *Id.* at 7. The government also argued that USF&G was not equitably subrogated to Gibbs, the prime contractor, and that the court therefore lacked subject matter jurisdiction under a theory of equitable subrogation. *Id.* at 7–8.

USF&G filed an opposition to the motion to dismiss, in which it argued that the Court of Federal Claims had jurisdiction because sovereign immunity is waived for

suits by insurers as equitable subrogees and that USF&G qualified as Gibbs's equitable subrogee. Opp'n to Mot. to Dismiss Am. Compl. at 6–9, *Fid. & Guar. Ins. Underwriters, Inc. v. United States*, No. 1:14-cv-00084-EDK (Fed. Cl. July 3, 2014), ECF No. 22. In its opposition, USF&G relied on the Supreme Court's decision in *United States v. Aetna Casualty & Surety Co.*, 338 U.S. 366 (1949), and our decision in *Insurance Co. of the West v. United States*, 243 F.3d 1367 (Fed. Cir. 2001) ("*ICW*"). *Id.* In *Aetna*, the Court held that the Federal Tort Claims Act, 28 U.S.C. § 1346(b), authorizes insurers who pay the claims of those injured by the negligence of government employees to sue the United States as equitable subrogees. 338 U.S. at 380. USF&G argued that our decision in *ICW*, which involved a Miller Act surety[2] suing for breach of contract, "extended" the rationale for waiver of sovereign immunity articulated in *Aetna* to claims brought under the Tucker Act. Opp'n to Mot. to Dismiss at 7.

---

[2] The Miller Act, in pertinent part, provides: "Before any contract of more than $100,000 is awarded for the construction, alteration, or repair of any public building . . . of the Federal Government, a person must furnish to the Government [a Performance bond and a Payment bond]." 40 U.S.C. § 3131(b). Typically, these bonds are posted by a surety company. *See, e.g.*, *Transamerica Ins. Co. v. United States*, 989 F.2d 1188, 1189 (Fed. Cir. 1993) ("Transamerica, a surety bond company, issued payment and performance bonds for both of the contracts on behalf of Bodenhamer for the benefit of the government."); *Fireman's Fund Ins. Co. v. United States*, 909 F.2d 495, 496 (Fed. Cir. 1990) ("Fireman's Fund Insurance Company . . . agreed to be Westech's surety by issuing both payment and performance bonds.").

IV.

On November 19, 2014, the Court of Federal Claims granted the government's motion to dismiss. *Fid. & Guar.*, 119 Fed. Cl. at 201. The court started from the premise that, "as a general matter, '[a] plaintiff must be in privity with the United States to have standing to sue the sovereign on a contract claim.'" *Id.* at 198 (alteration in original) (quoting *S. Cal. Fed. Sav. & Loan Ass'n v. United States*, 422 F.3d 1319, 1328 (Fed. Cir. 2005)). Because USF&G was not a party to a contract with the government, the court determined that USF&G had to demonstrate that its suit fell within one of several "limited exceptions" to the privity requirement. *Id.*

The Court of Federal Claims rejected USF&G's argument that it was entitled to sue under the Tucker Act because, while not in privity with the government, it was equitably subrogated to the claims of Gibbs against the Postal Service. The court stated:

> While it is well established that a surety may bring suit against the United States under a theory of equitable subrogation, neither the Court of Federal Claims nor the Federal Circuit has ever recognized a waiver of sovereign immunity under the Tucker Act in a case like the present one, in which a general liability insurer invokes the doctrine of equitable subrogation to step into its insured's shoes for purposes of suing the government for breach of contract.

*Id.* at 198–99. The court explained that, while USF&G "analogize[d] its status to that of a Miller Act surety," the analogy was incomplete because a Miller Act surety "step[s] into the shoes" of a contractor and assumes the contractor's performance obligations, whereas a general liability insurer does not. *Id.* at 198.

Finally, the Court of Federal Claims rejected USF&G's argument that, in its discussion of *Aetna*, *ICW* pronounced a broad rule recognizing a waiver of sovereign immunity for equitable subrogees, even if they do not fully step into the shoes of the contractor. *Id.* at 198–201. USF&G timely appealed the dismissal of its amended complaint. We have jurisdiction pursuant to 28 U.S.C. § 1295(a)(3).

DISCUSSION

I.

We review de novo the Court of Federal Claims' grant of a motion to dismiss for lack of subject matter jurisdiction. *ICW*, 243 F.3d at 1370; *see also Banks v. United States*, 741 F.3d 1268, 1275 (Fed. Cir. 2014). A party invoking the jurisdiction of the Court of Federal Claims has the burden of establishing jurisdiction by a preponderance of the evidence. *Brandt v. United States*, 710 F.3d 1369, 1373 (Fed. Cir. 2013); *Reynolds v. Army & Air Force Exch. Serv.*, 846 F.2d 746, 748 (Fed. Cir. 1988).

The Tucker Act provides, in relevant part, that the Court of Federal Claims has jurisdiction to "render judgment upon any claim against the United States founded . . . upon any express or implied contract with the United States." 28 U.S.C. § 1491(a)(1). As a general rule, for purposes of Tucker Act jurisdiction, the government "consents to be sued only by those with whom it has privity of contract." *Erickson Air Crane Co. of Wash. v. United States*, 731 F.2d 810, 813 (Fed. Cir. 1984). In other words, if a party is not a signatory to a contract with the government, it may not bring a direct suit for breach of contract against the government. *See Anderson v. United States*, 344 F.3d 1343, 1351 (Fed. Cir. 2003) ("Thus, although the trust might be, if at all, the direct signatory to the alleged contract, the Paul sons were clearly not signatories of the Application and could not therefore be in direct privity with the sovereign.").

There are, however, certain limited exceptions to the rule of privity of contract as a prerequisite to invoking jurisdiction under the Tucker Act. *S. Cal. Fed. Sav. & Loan Ass'n*, 422 F.3d at 1328 ("Limited exceptions to that general rule have been recognized . . . ."); *First Hartford Corp. Pension Plan & Tr. v. United States*, 194 F.3d 1279, 1289 (Fed. Cir. 1999) (noting that "[t]here are exceptions to this general rule" and enumerating examples). "[T]he common thread that unites these exceptions is that the party standing outside of privity by contractual obligation stands in the shoes of a party within privity." *First Hartford*, 194 F.3d at 1289. Applicable here, in *Balboa Insurance Co. v. United States*, 775 F.2d 1158, 1160–61 (Fed. Cir. 1985), we held that a Miller Act surety was equitably subrogated to the claims of a prime contractor and could recover from the United States payments made to the prime contractor after the surety had noticed the government of the prime contractor's default. *See, e.g.*, *Nat'l Sur. Corp. v. United States*, 118 F.3d 1542, 1545 (Fed. Cir. 1997) (following *Balboa*); *Transamerica Ins. Co.*, 989 F.2d at 1194–95 (same).

## II.

On appeal, USF&G does not contend that it was in privity of contract with the Postal Service. Rather, as it did in the Court of Federal Claims, it argues that, under the Tucker Act, sovereign immunity is waived as to "any claim" founded upon any contract with the United States and that the Court of Federal Claims therefore has jurisdiction to hear its suit. USF&G analogizes to *Aetna*, 338 U.S. 366, and asserts that *ICW*, 243 F.3d 1367, adopted and applied the reasoning of *Aetna* to the Tucker Act. Specifically, USF&G relies upon the statement in *ICW* that "the language of both [the Federal Tort Claims Act and the Tucker Act] contains an unequivocal expression waiving sovereign immunity as to claims, *not particular claimants*." 243 F.3d at 1373–74 (emphasis added). According to USF&G, the combination of *Aetna* and *ICW*

establishes that it should be considered an equitable subrogee of Gibbs for purposes of jurisdiction in the Court of Federal Claims. USF&G thus urges that the Court of Federal Claims erred in dismissing its amended complaint.

The government responds that the Court of Federal Claims correctly held that USF&G does not meet the requirements for being able to sue the United States in its own name as an equitable subrogee of Gibbs. It argues that USF&G had no relationship at all with the Postal Service and that USF&G's payment of settlement monies and legal fees satisfied only an obligation to Gibbs, not to the government. The government thus distinguishes USF&G's case from those involving sureties. It explains that, unlike the situation in which USF&G found itself, when a Miller Act surety is required to perform under a performance bond, it steps into the shoes of the contractor and only then may rely on the Tucker Act's waiver of sovereign immunity. The government contends that in *ICW* we held that the doctrine of equitable subrogation is triggered only "when the surety takes over contract performance or when it finances completion of the defaulted contract." *Id.* at 1370.

### III.

The question before us is whether the Tucker Act's waiver of sovereign immunity extends to a general liability insurer seeking to sue as the equitable subrogee of a prime contractor. We hold that it does not. The Court of Federal Claims did not err in dismissing USF&G's amended complaint for lack of subject matter jurisdiction.

### A.

As noted, USF&G rests its claim of equitable subrogation on our decision in *ICW*. *ICW* involved a Miller Act surety who brought suit against the government under the Tucker Act for breach of contract. The surety, Insur-

ance Company of the West ("ICW"), alleged that, as a Miller Act surety that had posted a performance bond for a prime contractor with the government, it was entitled to receive payments from the government once the prime contractor failed to fulfill its obligations and ICW assumed responsibility for completion of the contract work. *ICW*, 243 F.3d at 1369. ICW claimed that it was equitably subrogated to the prime contractor and thus had standing to sue the government in its own name. Although the Federal Circuit had previously established in *Balboa* and other cases that a surety could recover from the United States payments made to a contractor after the surety had notified the government of the contractor's default, the government contended in *ICW* that the Court of Federal Claims lacked jurisdiction in light of the Supreme Court's decision in *Department of the Army v. Blue Fox, Inc.*, 525 U.S. 255 (1999). The government argued that *Blue Fox* had effectively overruled *Balboa* and its progeny. According to the government, *Blue Fox* demonstrated that the "government has not waived sovereign immunity for a surety's claims based on equitable subrogation." *ICW*, 243 F.3d at 1370. The *ICW* court thus was called upon to examine *Blue Fox*.

B.

In *Blue Fox*, an insolvent prime contractor failed to pay Blue Fox, a subcontractor, for work Blue Fox performed on a construction project for the Department of the Army. After the government received notice that Blue Fox had not been fully paid, the government nevertheless disbursed additional funds to the prime contractor. In due course, Blue Fox obtained a default judgment against the prime contractor for the amount the prime contractor owed it. Seeing, however, that it could not collect from the prime contractor, Blue Fox sued the Army in federal district court, seeking to recover the balance due on its contract with the prime contractor. In its suit, Blue Fox also sought an equitable lien on any funds still held by

the Army for the project. Blue Fox predicated jurisdiction on the Administrative Procedure Act ("APA"), 5 U.S.C. § 702, and 28 U.S.C. § 1331.[3] On cross-motions for summary judgment, the district court held that the APA's waiver of sovereign immunity did not extend to Blue Fox's claim against the Army. Concluding that it lacked jurisdiction, the district court granted the government's motion for summary judgment. *Blue Fox*, 525 U.S. at 259. The Ninth Circuit reversed the decision of the district court, however, holding that the APA waived sovereign immunity for equitable actions. *Id.* After granting the government's petition for certiorari, the Supreme Court held that the APA did not waive sovereign immunity for a suit, such as Blue Fox's, to enforce an equitable lien. *Id.* at 263. In doing so, the Court upheld the "long-settled rule" that sovereign immunity bars subcontractors from recovering from the government when general contractors become insolvent. *Id.* at 257, 264.

The Supreme Court concluded its decision by considering Blue Fox's contention that "in several cases examining a surety's right of equitable subrogation, [the] Court suggested that subcontractors and suppliers can seek compensation directly against the [g]overnment." *Id.* at 264 (citing *Prairie State Bank v. United States*, 164 U.S. 227, 231 (1896); *Henningsen v. U.S. Fid. & Guar. Co.*, 208 U.S. 404, 410 (1908); *Pearlman v. Reliance Ins. Co.*, 371 U.S. 132, 141 (1962)). The Court rejected Blue Fox's

---

[3] Section 702 of Title 5 states: "A person suffering legal wrong because of agency action, or adversely affected or aggrieved by agency action within the meaning of a relevant statute, is entitled to judicial review thereof." Section 1331 of Title 28 provides that "[t]he district courts shall have original jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States."

reliance on *Prairie State Bank*, *Henningsen*, and *Pearlman*. *Id.* at 265. The Court pointed out that none of those cases "involved a question of sovereign immunity, and, in fact, none involved a subcontractor directly asserting a claim against the [g]overnment." *Id.* Accordingly, the Supreme Court concluded that *Prairie State Bank*, *Henningsen*, and *Pearlman* "do not in any way disturb the established rule that, unless waived by Congress, sovereign immunity bars subcontractors and other creditors from enforcing liens on [g]overnment property or funds to recoup their losses." *Id.*

C.

In *ICW*, the government argued that, because *Balboa* and other cases allowing equitable subrogation were based directly or indirectly on *Prairie State Bank*, *Henningsen*, or *Pearlman*, the Supreme Court's discussion of those three cases and its rejection of Blue Fox's reliance on them, meant that "*Balboa* and other similar cases are no longer valid because they cannot find the requisite waiver of sovereign immunity." 243 F.3d at 1372. The *ICW* court agreed with the government that "*Balboa* and its progeny relied on *Prairie State Bank*, *Henningsen*, or *Pearlman* to find a waiver of sovereign immunity for equitable subrogation claims against the government." *Id.* The court also agreed with the government that, "after *Blue Fox*, we can no longer rely on those three cases to find a waiver of sovereign immunity." *Id.* Having determined that *Prairie State Bank*, *Henningsen*, and *Pearlman* could no longer be viewed as supporting the holding of *Balboa*, the *ICW* court turned to ICW's reliance on the Tucker Act as providing the jurisdictional basis for its suit, stating: "The issue in this case . . . is whether the government's consent [in the Tucker Act] to suit based on a contract includes consent to suit on a contract brought by a subrogee." *Id.*

In analyzing the jurisdictional issue in *ICW*, the court looked to the Supreme Court's sovereign immunity analysis in *Aetna*. *Id.* at 1369. In *Aetna*, the Supreme Court addressed whether an insurance company could bring suit in its own name against the government on a tort claim to which it had become subrogated by payment to an insured. 338 U.S. at 370–71. The Court analyzed whether the Anti-Assignment Act, now codified at 31 U.S.C. § 3727, precluded such suits. *Id.* at 374–76. It held that it did not. The Court also held that the government had waived its sovereign immunity from such suits under the Federal Tort Claims Act. *Id.* at 380 ("The broad sweep of [Federal Tort Claims Act] language assuming the liability of a private person, the purpose of Congress to relieve itself of consideration of private claims, and the fact that subrogation claims made up a substantial part of that burden are also persuasive that Congress did not intend that such claims should be barred.").[4]

---

[4]   The Federal Tort Claims Act provides, in relevant part, that district courts "shall have exclusive jurisdiction of civil actions on claims against the United States" for "injury or loss of property, or personal injury or death caused by the negligent or wrongful act or omission of any employee of the [g]overnment while acting within the scope of his office or employment, under circumstances where the United States, if a private person, would be liable to the claimant." 28 U.S.C. § 1346(b)(1). The Supreme Court recently stated that, "compared to other waivers of immunity (prominently including the Tucker Act), the [Federal Tort Claims Act] treats the United States more like a commoner than like the Crown." *United States v. Kwai Fun Wong*, 135 S. Ct. 1625, 1637 (2015). The Court further stated that "when defining substantive liability for torts, the [Federal Tort Claims Act] reiterates that the United States is accountable 'in

We explained in *ICW* that *Aetna* "directly held that Congress's waiver of sovereign immunity under the Tort Claims Act included suits by subrogees." 243 F.3d at 1373. We reasoned, though, that "nothing in *Aetna* suggested that its holding regarding sovereign immunity was based on the Federal Tort Claims Act's broad language." *Id.* Rather, we determined that

> *Aetna* reflects a broader and more generally applicable legal principle: waivers of sovereign immunity applicable to the original claimant are to be construed as extending to those who receive assignments, whether voluntary assignments or assignments by operation of law, where the statutory waiver of sovereign immunity is not expressly limited to waivers for claims asserted by the original claimant.

*Id.* Finding that "[n]either Federal Tort Claims Act nor the Tucker Act is limited to claims asserted by the original claimant," we stated that "the language of both acts contains an unequivocal expression waiving sovereign immunity as to claims, *not particular claimants*." *Id.* at 1373–74 (emphasis added). "Finally," we stated, "the Supreme Court itself has consistently assumed that the waiver of sovereign immunity contained in the Tucker Act extends to assignees." *Id.* at 1374. After noting that the Supreme Court's decision in *United States v. Atlantic Mutual Insurance Co.*, 298 U.S. 483 (1936), "demonstrates directly that the Tucker Act's waiver of sovereign immunity extends to a subrogee," we concluded that "a subrogee, after stepping into the shoes of a government contractor, may rely on the waiver of sovereign immunity in the Tucker Act and bring suit against the United States." *Id.*

---

the same manner and to the same extent as a private individual.'" *Id.* at 1637–38 (quoting 28 U.S.C. § 2674).

at 1374–75. We therefore held that ICW's suit in the Court of Federal Claims could proceed.

IV.

As noted, USF&G rests its argument that a general liability insurer can be subrogated to a prime contractor's contract with the government for purposes of establishing Tucker Act jurisdiction on our statement in *ICW* that the Tucker Act's waiver of sovereign immunity applies "to claims, not particular claimants." In USF&G's view, that statement opened the door to claims from all equitable subrogees, regardless of the status or nature of the claimant bringing the suit for breach of contract. We do not agree.

*ICW* does not stand for the broad proposition that USF&G assigns it. Rather, in responding to the government's argument based on *Blue Fox*, *ICW* simply reaffirmed the previously "well established" principle that "a surety could sue the United States and recover not only any retainage but also any amounts paid by the United States to the contractor after the surety had notified the government of default." *Id.* at 1370–71. Indeed, in a footnote to our concluding holding in *ICW*, we expressly stated, "[w]e believe that *Balboa* correctly states the law of equitable subrogation." *Id.* at 1375 n.3. Thus, in *National American Insurance Co. v. United States*, we stated that *ICW* "did not change the established precedent that a payment bond surety that discharges a contractor's obligation to pay a subcontractor may be equitably subrogated to the rights of the contractor." 498 F.3d 1301, 1307 (Fed. Cir. 2007). In fact, in reaching our conclusion in *ICW*, and in rejecting the government's position in the case, we distinguished *Blue Fox* principally because Blue Fox was "a subcontractor . . . *not a surety*." *ICW*, 243 F.3d at 1371 (emphasis added) ("It is well-established that a surety who discharges a contractor's obligation to pay subcontractors is subrogated only to the rights of the

subcontractor. Such a surety does not step into the shoes of the contractor and has no enforceable rights against the government.").[5]

We held in *ICW* that, "after stepping into the shoes of a government contractor" and assuming its obligations, a subrogee may "rely on the waiver of sovereign immunity in the Tucker Act." *Id.* at 1375. Thus, when viewed in its proper context, the statement in *ICW* that the Tucker Act's waiver of sovereign immunity, like that of the Federal Tort Claims Act, applies "to claims, not particular claimants," cannot bear the weight that USF&G places upon it. The statement simply reflects the fact that, in their respective waivers of sovereign immunity, both the Federal Tort Claims Act and the Tucker Act speak in terms of claims against the United States. This is hardly surprising given that both statutes are couched in terms of the subject matter of the claims. *See Kwai Fun Wong*, 135 S. Ct. at 1634, 1637–38 (distinguishing the similar

---

[5] In *ICW*, we explicitly recognized the unique nature of Miller Act sureties in contrast to other entities, such as general liability insurers. We explained that a "surety guarantees that a contract will be completed in the event of the principal's default and that the government will not have to pay more than the contract price." 243 F.3d at 1370. That guarantee is in the form of a "performance bond," which "gives the surety the option of taking over and completing performance or of assuming liability for the government's costs in completing the contract which are in excess of the contract price." *Id.* In that way, we reasoned, the surety bond "creates a three-party relationship, in which the surety becomes liable for the principal's debt or duty to the third party obligee." *Id.* (citing *Balboa*, 775 F.2d at 1160). "If [a] *surety* fails to perform, the [g]overnment can sue it on the bonds." *Id.* (emphasis in original) (quoting *Balboa*, 775 F.2d at 1160).

language of the Federal Tort Claims Act and the Tucker Act based, in part, on the subject matter covered by the respective Acts). In short, nothing in *ICW* undermines the well-settled principle that the exceptions to the general jurisdictional rule requiring "privity of contract" are based on "the party standing outside of privity by contractual obligation stand[ing] in the shoes of a party within privity." *First Hartford*, 194 F.3d at 1289. Indeed, in its decision dismissing USF&G's amended complaint, the Court of Federal Claims pointed out that none of our cases decided after *ICW* "has suggested that *ICW* stands for the broader proposition urged here, creating an exception to the privity requirement for all equitable subrogees, even those like [USF&G] that have not assumed any obligations under a contract with the United States." *Fid. & Guar.*, 119 Fed. Cl. at 201 (citing *Lumbermens Mut. Cas. Co. v. United States*, 654 F.3d 1305, 1312–13 (Fed. Cir. 2011); *Nat'l Am. Ins. Co.*, 498 F.3d at 1307; *Fireman's Fund Ins.*, 313 F.3d at 1351–52). In this case, by settling the tort claim of Mr. Wilson, USF&G, if anything, became the equitable subrogee of Gibbs solely with respect to that tort claim, the settlement of which Gibbs would have had to pay if USF&G had not stepped in. USF&G never became an equitable subrogee of Gibbs with respect to any contract claims of Gibbs against the Postal Service, however. That is because USF&G never stepped into the shoes of Gibbs in Gibbs's capacity as general contractor. As Gibbs's general liability insurer, USF&G in this case had no responsibility for contract performance and had no obligations owed to the government. It therefore failed to establish jurisdiction under the Tucker Act.

## CONCLUSION

For the foregoing reasons, we conclude that the Tucker Act cannot be read to waive sovereign immunity for a general liability insurer, such as USF&G, who brings suit as an equitable subrogee of a prime contractor. We therefore affirm the decision of the Court of Federal Claims

dismissing USF&G's amended complaint for lack of subject matter jurisdiction.

## AFFIRMED

### Costs

Each party shall bear its own costs.